| 25 | 261 |
|----|-----|
| 55 | 629 |

| 25 | 261 |
|----|-----|
| 56 | 494 |

| 25 | 261 |
|----|-----|
| 70 | 578 |

## PARSEL v. BARNES & BRO.

MANDAMUS—*affidavit to response.* An affidavit is not necessary to the response to a petition for a mandamus, in the absence of an order of court requiring it. The propriety of presenting that question by general demurrer to the response is well questioned.

COUNTY COURTS—*power to call in scrip.* In sections 58, 59 and 60, of chapter 147 of *Gould's Digest, p. 925,* authorizing county courts to call in county scrip, to classify, cancel and reïssue it; to fix a time for scrip to be presented; and providing that all holders, failing to present, shall be barred from collecting, the *intention* of the Legislature clearly is, that all county scrip thereafter issued should be subject to the conditions and restrictions of those provisions.

It was the clear intent of the law to operate *prospectively;* this law is *constitutional.*

LEX LOCI CONTRACTUS. The law existing at the time and place of making a contract is a part of the contract: as much so as the stipulations expressed in the agreement.

COUNTY WARRANTS—*order of county court required for.* The statutes confer no power on the county clerk to issue county warrants otherwise than upon the order of the county court.

PUBLIC OFFICERS. It is well settled that public officers and agents are held more strictly within the limits of their prescribed powers than private general agents.

It is well settled that the fact that a contract made by a public agent, relating to a subject within the general scope of his powers, does not bind his principal, if there was a want of specific power to make it.

LAW OF AGENCY. A private agent, acting in violation of specific instructions, yet within the scope of his general authority, may bind his principal.

The rule is otherwise as to the effect of a like act of a public agent.

*Appeal from Pulaski Circuit Court.*

Hon. LIBERTY BARTLETT, Circuit Judge.

GALLAGHER & NEWTON, for appellant.

Sections 58, 59 and 60, Gould's Digest, give county courts power to order in all scrip; and, under sec. 60, the scrip was annulled, if not presented. The appellees having failed to present the same, lost their claim against the county. Parties to the contract are presumed to have contracted according to existing laws. *Newton v. Peay,* 21 *Ark.,* 86. The statute above referred to was in the statute book long before said scrip was issued; said parties must be presumed to have taken it subject to its being called in at any time by the county court. No case is shown for the issuance of a mandamus, because the petition does not show that the appellee has no other adequate remedy. *Goings v. Mills,* 1 *Ark.,* 11; *Taylor v. The Governor,* 1 *Ark.,* 21; *Webb v. Hanger, id.,* 121; *Trapnall, ex parte,* 1 *Eng.,* 9; *Williamson, ex parte,* 3 *id.,* 427; *Danley v. Whiteley,* 14 *Ark.,* 687.

GARLAND & NASH, for appellees.

The act of the Legislature which seems to authorize the calling in of scrip, and under which the county court proceeded here, is unconstitutional, so far as it affects the rights of the holders of scrip issued before that order. *Gould's Digest,* 925, sec. 580. The scrip is held as a contract between the parties, not to be interfered with, neither to be diminished or added to, no more than a contract between individuals. *Bertrand v. Byrd,* 5 *Ark.,* 651; *Woodruff v. State,* 5 *Ark.,* 285; *Woodruff v. Trapnall,* 10 *Howard,* (*U. S.,*) 190; *Lafayette County v. Underhill's heirs,* 19 *Ark.,* 360, 409.

The clerk issuing this scrip all in due form, acting within the scope of his authority, as he did, under our law, his acts

are conclusive, and are binding on the county and all others. See *Story's Agency*, p. 451–2, (notes 1, 2, 3); *ib.*, 307–19–20; *ib.*, 322 *and notes; Lee v. Monroe*, 7 *Cranch.*, 366; 8 *Wendell*, (*N. Y.*,) 403, 422; 9 *Wheaton*, 720–3.

And this is particularly so when the officer is not a party to the suit. *State v. Brennan's Liquors*, 25 *Conn. Rep.*, 278.

GREGG, J.

This suit was instituted by the appellees petitioning the Pulaski circuit court for a mandamus against the appellant, as treasurer of said county, and to compel him to accept and pay off certain claims held by the appellees, which they alleged were warrants, legally issued by said county, and for the payment of which the said Parsel, as such treasurer, was liable.

So far as appears by the record, the claims held by the appellees were in the usual form of county warrants, duly issued, and were signed by the clerk of the county, and amounted in the aggregate to $975\frac{83}{100}$, which were duly presented to the appellant for payment, and which he had refused to pay.

Upon the presentation of the appellees' petition, an alternative mandamus was issued, upon the return of which the appellant appeared and filed his response to the writ, in which he admits the petitioners are the holders of what purports to be twenty-seven pieces of Pulaski county scrip, issued previous to the 15th day of October, 1866, and that the same had been presented to him, as treasurer, for payment; he responds, that at the October term, 1866, of the county court of said county, the court ordered that all county scrip issued previous to the 15th day of October, 1866, and then outstanding, should be presented to said county court on or before the 13th day of February, 1867, for classification and reissuing, &c.; that said appellees had due notice, and failed to present said supposed county warrants to the county court, &c.; and that thereby they were forever debarred from collecting the same.

The appellant further responded that no order was ever made by said county court allowing the demand and directing said clerk

to issue warrants therefor, but that said clerk issued said supposed warrants wrongfully, without due authority from said county court, and for that reason he was not bound to pay the same, and asked to be discharged from the writ.

To which response the appellees interposed their demurrer, and the court, after taking the case under advisement until a subsequent term, found in favor of the demurrer, and rendered judgment, making the mandamus peremptory against appellant, to which finding and judgment he excepted and appealed to this court.

To sustain the demurrer the appellees insist that the order of the county court, calling in the outstanding scrip, was unconstitutional and void, so far as it was intended to affect the scrip previously disbursed.

Secondly. That the clerk of the county, in the issuance of county warrants, is the duly authorized agent of the county; and if such warrants were regular upon their face, and duly signed by him, the county is bound thereby, and it is immaterial to the holder whether or not the county court had made an order allowing such scrip and directing the clerk to issue the same.

Thirdly. That the response was not verified by affidavit.

In reference to the last cause assigned, we do not hold, in the absence of any order requiring it, that an affidavit was necessary to this response; but, if we did, we might well question the propriety of presenting that question by general demurrer.

We come to the main questions: Whether the order calling in the county scrip is binding on holders; and whether the county is liable for warrants issued and signed by the clerk without the order of the county court.

By the act of the General Assembly of January 6, 1857, (secs. 58, 59, and 60, of chap. 147 of Gould's Digest, p. 925,) it is provided that "if the county court of any county may deem it expedient to call in the outstanding scrip of such county, in order to redeem, cancel, reissue, or classify the same, or for any other lawful purpose whatever, it shall be the duty of such

court to make an order for the purpose of fixing a time for such scrip to be presented, of which order holders of county scrip shall have notice;" and prescribes the manner in which such notice shall be given, requiring it to be published in each township in the county, as well as in newspapers printed and published in the State; and providing that all persons who hold any scrip of such county and neglect or refuse to present the same, as required by such order of the county court, after the notice aforesaid, shall be forever debarred from deriving any benefit from their claims. It is admitted that the scrip in question was issued since the passage of this act.

The intention of the Legislature is too clear to admit of any doubt. The neglect of duty, or incapacity of some of the county officers, often rendered it impossible for the county court, or the tax-payer, to determine the amount of outstanding county scrip; in whose hands the same was, and for what purpose issued; and that the court and the citizens of the county might be fully advised—might know what amount of revenue was necessary to be raised, etc.—such act seemed important, and there can be no question but the Legislature intended to give the county courts such control over the warrants or scrip of the county as would enable them to take such action as would be most advantageous to the public, and fully intended that all county scrip issued thereafter should be subject to such conditions and restrictions; and if the law only operated prospectively, as was clearly its intent, there was certainly no violation of the Constitution in its enactment. But counsel insist that the order was unconstitutional, because made after the issuance of the warrants, without so attacking the law. It seems well settled that the law existing at the time and place of making a contract must be considered as a part of the contract. See *Thurston v. Peay, recr.*, 21 *Ark.*, 86.

None of the parties to this suit question the proposition that the existing law is as much a part of the contract as are the stipulations expressed in the agreement. Should individuals, by express contract, stipulate that the one should ac-

knowledge an indebtedness to another upon the condition only that he have a discretion left him, that the obligation given be presented to him at a time specified, or that he should name a time and place at which he should have the privilege of redeeming or renewing the same, and in case the holder refused to present the same, he should forfeit the claim, it certainly would not be insisted that such contract was unconstitutional, illegal or void by reason of such stipulations between the parties. Can it be so, when the law, which is admitted to be part of the contract, fixes such conditions and restrictions? If individuals can be so bound, a community at large, acting through their corporate officers or agents, would have equal privilege, and if the county scrip occupied precisely the same grounds as bills of exchange, which is by no means admitted, the holder could not justly complain, because the law .was public, was a part of his contract, and he had full notice of its restrictions, terms and conditions at the time the scrip was issued and come into his hands, and he accepted the scrip with such conditions in law attached, and he is bound thereby.

Lastly. Were the warrants issued and signed by the clerk binding upon the county, if issued without the direction or order of the county court? *Sec. 7, chap. 49, of Gould's Digest*, declares that the " county court shall have power in all matters relating to county taxes, disbursements of money for county purposes," &c., and " to audit, settle and direct the payment of all demands against the county." *Sec. 16, chap. 147, p. 918,* declares " that the treasurer shall receive and receipt for all moneys payable into the county treasury, and pay and disburse the same on warrants drawn *by order* of the *county court.*" Section 46 of the same chapter, p. 923, provides " that when any county court shall ascertain that any sum of money is due from the county to any person, body politic or corporate, *an order shall be made* allowing the same, and directing the clerk to issue a warrant therefor," &c. These are the principal clauses bearing upon the question before the court, and there is

no authority or power whatever conferred upon the clerk to issue warrants otherwise than upon *the order of the county court.* And the law requires all the orders and proceedings of the county court to be made matter of public record. So the full extent of the power and authority of the clerk can readily be seen, by referring to the law and orders regulating his duties, and the complaint that trade is incumbered by thus taxing the diligence of dealers, can have no force, when in conflict with well established principles of law and the general interest that the whole community have in being protected against improvident.or fraudulent acts of faithless officers or agents. See 18 *Md. Rep.*, 282-3. Also case of *Mayor & C. C. of Baltimore v. Reynold*, 20 *Md. Rep.*, 11, and *Lee v. Monroe*, 7 *Cranch*, 366. We deem it well settled that public officers or agents are held more strictly within the limits of their prescribed powers than private general agents—not only because the extent of their power is more easily seen, but because the rights of large communities are in greater need of diligent guards than those of individuals, whose selfishness is quite apt to hold in frequent review the acts of all employees. See *Clapp v. Cedar county*, 5 *Iowa, R.*, 16. In the case of *Williams v. Payton's lessee*, 4 *Wheaton*, 77, Chief Justice MARSHALL said, " when an agent has a naked power, not coupled with an interest, the law requires that every prerequisite to the exercise of such power must precede its exercise—that the agent must pursue the power or his acts will not be sustained."

So it seems well settled, also, that the fact that the contract made by a public agent related to a subject within the general scope of his powers, does not bind his principal, if there was a want of specific power to make it. Although a private agent, acting in violation of specific instructions yet within the scope of his general authority, may bind his principal, the rule as to the effect of a like act of a public agent is otherwise. See 20 *Md. R.*, 10, and 26 *Wend.*, 193.

Upon these conclusions we find the circuit court of Pulaski county erred in sustaining the appellees' demurrer to appellants

response, for which the judgment of that court is reversed, and this cause remanded, to be proceeded in according to law, and not inconsistent with this opinion.

McCLURE, J., dissenting, says:

The principle involved in the decision just announced, and its effect upon the law, forbids that I should withhold a full and explicit statement of my solemn convictions touching the grounds of my dissent, with the reasons upon which they are based.

With all due deference for the opinion of the majority of the court, I must be permitted to say that, in my humble opinion, they have delivered a dissertation on the powers and authority of the county courts, and seem to have ignored the question presented by the record in this case. If the determination and finding of the court upon their argument was correct, the reason they have given would be a matter that I would scarce take the time to refute, but both, in my opinion, being wrong, I shall briefly state the reasons that have forced my present convictions.

This was an application for a mandamus by Barnes & Bro., against the treasurer of Pulaski county, to compel the payment of certain county warrants or scrip in the hands of Barnes & Bro.

The record presents but one question, and that is: Did the court err in sustaining the demurrer of Barnes to the answer or response of the treasurer?

The response of the treasurer says that the county court ordered all county scrip, issued previous to the 15th of October, 1866, then outstanding, should be presented to said court on or before the 13th day of February, 1867, for the purpose of classification and reissuing, and refers to the order of the court and makes it a part of his response, whereby the collector and treasurer are directed not to receive any scrip issued prior to October 15, 1866.

The office of collector and treasurer are created by law; they are not members of the county court, and their duties are as independent of the county court as the Executive of the State. Arrogating to themselves almost dictatorial powers, the county court, on its own motion, attempts to issue a perpetual injunction against the collector and treasurer of the county, prohibiting them from receiving the scrip issued by the clerk of the county.

Under the provisions of *sec.* 58, *chap.* 147, *Gould's Digest*, the county courts are empowered to call in their county scrip once in every three years. The 59th section of same chapter requires the sheriff to give notice, in the manner therein prescribed, to the holders of the scrip to present the same. The 60th section debars all scrip not presented within the time given for presentation.

The amended petition of Barnes stated that, before the 13th of February, 1867, he presented said scrip to the clerk of the county, according to the terms of the order, set forth in said petition, made by the county court.

The validity of the action of the county court, in calling in the outstanding county scrip for classification and reissuing, is a matter that I need not discuss.

Under this form of proceeding, had the county court any power or authority to issue an order or command to the collector or treasurer, directing them to not receive or protest any scrip issued before the 15th of October, 1866? I am clearly of opinion that it had not, and that, in that respect, their action was illegal and void; and, being illegal and void, the court below did right in treating it so; and their action was no authority under which the treasurer could protect himself. He could not plead the order, because it had no legal effect.

If the county court desired to control the action of these officers, they should have applied for an injunction to the circuit court.

So far as the treasurer is concerned, in the absence of any legal command to the contrary, he was and is bound to pay the

scrip of the county, when presented, if he has the funds in his possession for that purpose. It is not for him to say that the county court never made an order authorizing the county clerk to issue the scrip, or that the clerk issued the same without authority.

The scrip itself purported to be the warrant of the court, under the seal thereof, commanding him to pay, and, so far as he was concerned, he was bound to presume that all the requirements of the law had been complied with.

The *validity* of this scrip is not before the court, nor are we called upon, in my opinion, to decide whether warrants issued and signed by the county clerk are binding on the county. The county is not a party to this proceeding, and we have no power or right to adjudicate upon such questions at this time.

The alternative writ had been issued, and to this writ the treasurer makes his return, and if good cause is] not shown by him, no matter what the merits or demerits of the county may be, the peremptory writ ought to issue. To say that a county may have dishonest, incompetent and unfaithful officers, as it appears was the case in this instance, and that the county authorities, who are charged with the protection of its interest, can sit idly by and see an application made for a mandamus against] the treasurer, to compel the payment of the scrip that they have ordered refunded, without taking steps to restrain the payment, certainly shows a dereliction of duty that deserves a severe reprimand, rather than the sympathy expressed by the majority of the court.

The return must contain a full and certain answer to all the averments made by the petition, and a fair and legal reason for disobeying the mandamus. In point of form, it requires the same certainty and precision necessary in other declarations and other pleadings. 6 *Bacon Abrg.*, 447.

Every allegation of the petition, save one, is admitted by the answer, and the only thing denied by the answer is, that Barnes presented the scrip to the county clerk before the 13th of February, 1867. If, then, the same certainty is required as

in other pleadings, from the person making the return, what fact or legal reason is set forth for disobeying the mandate to pay, or show cause why he should not, is or was presented to the court below.

Mandamus, although not a chancery proceeding, so far as the pleadings are concerned, partakes of that nature. If, then, this return had been an answer to a bill in chancery, and had not been sworn to, would it not have admitted all the allegations of the bill, and would not the Chancellor have granted the prayer of the bill, if no other defense had been made? This being true, was not the court below placed in just the same condition as though no return had been made by the treasurer; or was not the court, at least, placed in the same condition as though no sufficient return had been made; and, having been so placed, was it not the duty of the court to have awarded the peremptory writ? I think it was, and that the return made by the county treasurer admits all the allegations of the petition, and can not be construed into denying any thing, or setting up any defense, or showing any reason why the peremptory writ should not issue.

Whether a general demurrer was the proper manner to raise the question of verification, I do not propose to discuss. I know that the general demurrer, in effect, said that the return was not in law sufficient. It is nowhere asserted by the return that the county is not legally indebted in the amount of these pieces of scrip, and the attempted defense set up by the treasurer would not, in my opinion, be sufficient to have delayed the issuing of the peremptory writ.

The treasurer does not show any legal authority restraining him, or that he did not have the funds to redeem the scrip, and the peremptory writ ought to have issued.