KINARD *v.* SHACKLEFORD.

4-7731                                                    190 S. W. 2d 12

Opinion delivered November 5, 1945.

*John M. Shackleford,* for appellant.

*A. D. Pope* and *George E. Pike,* for appellee.

ROBINS, J. Appellee brought suit in the lower court to recover on a promissory note for $2,000, executed and delivered to him by appellant and secured by a chattel mortgage on certain machinery and equipment. Appellant admitted execution of the note and mortgage, but defended on the ground that liability on the note was discharged under the following .clause in the mortgage: "The party of the first part [appellant] is to drill a well SE¼ NE¼, section 15 twp. 17 S range, 14 west. If said well is completed as a commercial well, party of the second part [appellee] is to release said mortgage, for his original ⅛th of oil and gas lease, which has been given. If said well is not a commercial well party of the first part shall pay to the party of the second part the two thousand dollars plus interest from date." Appellant,

at the time the note sued on was executed, assigned to appellee a one-eighth interest in appellant's oil and gas lease covering the land whereon the well was located, and the parties apparently contemplated that, in event appellant should bring in a producing oil well, appellee would receive sufficient return from his interest in the lease to recompense him for the amount loaned.

Appellant alleged that he complied with the require- ment by drilling an oil well on the described land which was "a commercial producer."

It is undisputed that appellant did drill a well on this land, and the only issue in the case is whether the well which was brought in by him was a "commercial well" within the meaning of the phrase as used in the mortgage. The lower court found that the well drilled by appellant on the said land was not a "commercial well" and rendered decree for debt and foreclosure in favor of appellee. To reverse that decree appellant prosecutes this appeal.

One of appellant's associates in the drilling of the well testified that the well "blew in" about December 21, 1940; that "they shot it around eight in the morning, and about nine o'clock the oil was blowing over the top. . . . It was making heads at first, then a few hours after that it was a steady blow, and it blew from about 9 o'clock a. m. to 6 o'clock p. m. on the same day . . ."

This witness bought out appellant's interest in the well and tried without success to get the well to produc- ing. He stated that it was not a commercial well at any time; that "when it pays a profit that is a commercial well. . . . The grade has to go down to where it shows less than 2%." He also testified that after he took the well over he operated it for a few days and abandoned it because it was making only about five bar- rels a day, and "it was just a white elephant."

An oil worker who assisted in bringing the well in testified for appellant: "The hinderlite wouldn't func- tion. Got seven or eight joints into the hole in trying to

stab the hinderlite, the fluid was coming by intervals and it started coming by heads . . . the well blew out, and in trying to kill the water I think there was part of the tubing fell in the well. . . . I would say it was a commercial well . . . Salt water showed up about 10:00 or 11:00 o'clock, and it increased until there was about 90% of water . . . Q. That is your idea about it being a commercial well, it would have been if it had continued the way it came in? A. Yes. Q. You don't know whether any oil was sold off of it? A. Not to my knowledge, but there was a good deal of oil.''

A geologist, witness for appellant, testified: ''It was a wild well. . . . It was estimated as flowing 800 barrels of fluid, 5% oil and five million cubic feet of gas per twenty-four hour day. . . . My record covers only the first twenty-four hours completion.''

In answer to a hypothetical question describing the well the chairman of the Arkansas Oil Commission testified: ''I would say it was not an oil well.'' His definition of a commercial well is a well that produces oil and gas in sufficient quantities to pay the cost of drilling and operating cost.'

Section 10494 of Pope's Digest provides: ''A commercial well is hereby defined as a well that produces one hundred barrels of forty-two gallons each of oil each day of twenty-four hours for a period of thirty successive days.'' This section, however, is a part of Act 201 of the General Assembly of 1935, which was ''An Act to Provide for the Payment of a Bonus for the Location of New Oil Fields or Horizons and Making Appropriation Therefor.'' The first section of that Act provides for the payment by the state of a bonus for ''the first commercial oil well'' in new producing areas; and it might be held that the definition provided by the Act was designed by the legislature only as a basis for governing the payment of the bonus offered by the state to encourage drilling in new and unproved territory, rather than as a general definition intended to govern in all future transactions in the state.

We do not find it necessary to decide whether, under the rule that "the law existing at the time and place of making a contract is a part of the contract; as much so as the stipulations expressed in the agreement" (headnote 3, *Parsel* v. *Barnes & Bro.,* 25 Ark. 261), the legislative definition controls here. Whether the rights of the parties are determined in the light of the above quoted definition or in the light of the construction placed on the term by those engaged in the oil industry, the evidence in the case at bar clearly showed that the well was not at any time a commercial oil well. It was never possible to save from the well commercial oil in paying quantities, and it was abandoned for that reason a short time after it was completed. *United Central Oil Corporation* v. *Helm,* 11 F. 2d 760; *Helm* v. *United Central Oil Corporation,* 271 U. S. 686, 70 L. Ed. 1151, 46 S. Ct. 638.

The decree of the lower court was correct and it is in all things affirmed.

McFADDIN, J., not participating.