**CITIZENS DISCOUNT AND INVESTMENT CORPORATION and James N. Allen, Plaintiffs-Respondents,**

**v.**

**Cora Rosalee Carmack DIXON and State Automobile and Casualty Underwriters, Defendants-Appellants.**

**No. 34531.**

Missouri Court of Appeals, St. Louis District.

Aug. 28, 1973.

---

Zenge & Smith, Canton, Mitchell & Meade, Palmyra, for defendants-appellants.

Carstarphen, Harvey & Wasinger, Hannibal, for plaintiffs-respondents.

JOHN M. CAVE, Special Judge.

Defendant State Automobile and Casualty Underwriters appeals from judgment against it entered in accordance with jury verdicts for plaintiff Citizens Discount and Investment Corporation under "loss payable" clause of fire insurance policy, and for defendant Dixon on said defendant's cross-claim for the remainder of the face amount of a valued policy plus interest and for penalty and attorney's fees for vexatious refusal by insurer. We affirm.

Plaintiff Citizens Discount, as payee, and one James N. Allen, as guarantor, sued defendant Dixon, as maker, for the balance due on a promissory note, and by Count II of their petition prayed judgment against defendant State Automobile and Casualty Underwriters to the extent of said unpaid balance under the loss payable clause of a valued policy insuring defendant Dixon against loss by fire of a certain 1957 Chevrolet truck with a Daffin Feed Mill mounted thereon which was security for the aforementioned promissory note. Plaintiffs also alleged vexatious refusal to

pay and prayed for damages and attorney fees under § 375.420, RSMo 1969, V.A.M.S. On motion of defendant State Automobile and Casualty Underwriters, James N. Allen was dismissed as a party plaintiff. By answer to Count II of the petition, defendant State Auto admitted issuance of the pleaded policy with attached loss payable clause to plaintiff and admitted *damage* by fire. Said defendant further alleged that the policy provided that defendant insurer could replace the damaged property or pay the actual cost of replacement and that it had offered, and was still willing, to replace the property or pay the cost of replacement. In reply thereto, plaintiff denied that said policy provision was applicable under the law.

Except as to corporate existence of plaintiff and of defendant insurer, defendant Dixon's answer admitted the essential elements of Counts I and II of plaintiff's petition. For cross-claim against defendant insurer, Dixon alleged issuance by insurer of a valued policy in the sum of $11,000.00, total loss by fire within the policy period, proper notice of loss and compliance with requisites of the policy, and vexatious refusal of insurer to pay the stated value; and prayed for judgment for the face amount of the policy plus damages and attorney fees for vexatious refusal. By its answer to the cross-claim, insurer admitted issuance of the policy alleged, total destruction by fire within the policy period, notice of loss, and demand by insured for the face amount of the policy. For further answer, insurer alleged that the value of the property at the date of the loss was not to exceed $2,000.00, and that insurer had offered to replace the property with like kind or to pay more than the cash value of the property so destroyed. On the day of trial, insurer tendered into Court the sum of $2,500.00 plus accrued costs.

On jury trial the Court directed a verdict for plaintiff and against defendant Dixon at the close of all the evidence on Count I of the petition in the aggregate sum of $7,948.33 for principal and interest, and the jury returned verdicts for defendant Dixon on her cross-claim as follows:

| | |
|---|---|
| Recovery under the policy | $10,500.00 |
| Recovery for interest | 1,216.25 |
| Recovery for penalty | 735.00 |
| Recovery for attorney fees | 1,250.00 |
| TOTAL | $13,701.25 |
| Less Citizens Discount | 7,948.33 |
| Due Mrs. Dixon | $ 5,752.92 |

and for plaintiff against defendant insurer on Count II of plaintiff's petition in the sum of $7,948.33. After unavailing motion for new trial the appeal followed.

Appellant's principal point, from which all others flow, is that the trial court erred in its ruling with reference to the depreciation aspect of the measure of damages in this case. In Duckworth v. U. S. Fidelity & Guaranty Co., 452 S.W.2d 280 (Mo.App. 1970), it is held, at page 285 thereof, that the value of personal property insured by a "valued policy" is fixed by § 379.160, RSMo 1969, V.A.M.S. at the full amount of the policy issued on *this* property as of its issuance; that the measure of damages for its total destruction is the fixed value less depreciation from that date until its loss; that evidence of repairs and improvements between those dates with no suggestion of depreciation is sufficient to support a finding that the property at the time of loss was reasonably worth the amount of the insurance; and that the burden of proving no depreciation is on the plaintiff; citing Meier v. Eureka-Security Fire & Marine Ins. Co., 168 S.W.2d 127 (Mo.App. 1943); Curtis v. Indemnity Co. of America, 327 Mo. 350, 37 S.W.2d 616 (1931); Gould v. M.F.A. Mutual Insurance Co., 331 S.W.2d 663 (Mo.App. 1960); and Riccardi v. United States Fidelity & Guaranty Co., 434 S.W.2d 737 (Mo.App. 1968). Proffered evidence by two witnesses, neither of whom had seen the property herein insured, was to the effect that the witness was familiar with the market price of a 1957 two ton Chevrolet equipped with a Daffin feed mill; that the value of such a vehicle on December 1, 1969, was from $2,000.00–$2,800.00; that the reason for such depre-

ciation from July 16, 1969, to December 1, 1969, was the economic condition in the country; that small stock feeders were no longer competing with large feeders; that the cost of labor was so high as to make it impossible to operate the equipment; that this type of mill was obsolete because later mills had been improved and there was a depressed market for older machines. The offered testimony was denied by the court upon objection by plaintiff. Although not urged on appeal as error in this connection, the insurer attempted to elicit from defendant Dixon that the business of said defendant and her husband was unprofitable and that this situation had "something to do with depreciation."

■ Although insurer had pleaded in answer to defendant Dixon's cross-claim that it had offered to replace the property, it had also admitted in its answer the total loss by fire and the issuance of the valued policy. In view of the admissions, the pleaded measure of damages (replacement value) was inapplicable, and the proper measure of damages became, as held in *Duckworth, supra,* the fixed value of this truck and this feed mill less depreciation, if any, on this truck and this mill. It would appear, in view of the fact that the insurer itself had placed a value of $11,000.00 on the described personal property, that the evidence as to value and as to depreciation would necessarily be limited to the particular personal property insured, and not what some other property of perhaps similar nature but with no predetermined fixed value might be worth. The issue was not at what price *a* truck and mill might be replaced, but by what amount had *this* truck and mill depreciated from a stated value which the insurer fixed and for which it had accepted premiums. The proffered testimony not being so limited was properly denied.

■ Appellant further urges error in submitting to the jury an instruction authorizing recovery on defendant Dixon's cross-claim for vexatious refusal to pay on

the ground that there was no evidence to support the instruction. The substance of the testimony of counsel for cross-claimant was that his investigation and the evidence of repairs to and rebuilding of the truck and the attached mill after the issuance of the policy indicated some appreciation in value after issuance of the policy and not depreciation, and that the discussion of damages involved offers by insurer to replace the destroyed property. Further, counsel testified that insurer never offered to pay cash for the insured value less depreciation. The jury could find under this evidence that insurer was not acting in good faith by its efforts to effect disposition of the matter on the basis of replacement value instead of stated value less depreciation, and was not entitled to litigate on an issue previously ruled upon by the courts of this state, to-wit: the measure of damages in a valued insurance policy. See *Friedman v. State Mut. Life Assur. Co. of Worcester, Mass.,* 108 S.W.2d 156 (Mo. App. 1937). The court was not in error in submitting the issue of vexatious refusal to the jury.

■ Appellant also argues, without citation of any authority, that admission of testimony as to the reasonable value of attorney's fees on behalf of plaintiff as loss payee was reversible error. However, the only instruction authorizing recovery for attorney's fee was in the instruction submitting the issue of vexatious refusal on behalf of cross-claimant Dixon, and no such instruction was given and no such recovery was granted plaintiff in its Count II against defendant insurer. The allowance to cross-claimant was in accord with the evidence submitted with reference to services on behalf of cross-claimant and with the instruction, and defendant insurer has demonstrated no prejudice as a result thereof.

■ Lastly, error is urged for failure of the trial court to declare a mistrial because of prejudicial actions, conduct, remarks and leading questions asked by

counsel for plaintiff-respondent and prejudicial remarks made by the trial court. As to leading questions, counsel points principally to the examination of Mrs. Dixon by respondent, but concedes that this alleged error alone would not justify reversal. We have examined the transcript in detail, and, recognizing as did the trial court that Mrs. Dixon was a party defendant, find no error in her examination. Counsel for plaintiff did not erroneously disregard the admonition of the court to hold leading questions to a minimum because of the out-of-the-ordinary situation in this case. As specific evidence of improper conduct by respondent's counsel, appellant points to a notation by the reporter in the transcript that opposing counsel stated an objection "in a loud voice". The context of the objection shows that appellant, upon being asked by the court the purpose of a line of inquiry objected to as immaterial, stated in the hearing of the jury: "I want to show that they had practically started the business and I want to follow up to show that business was so bad that they moved—". Whereupon, the objection was interposed together with a request that appellant's counsel be reprimanded. These, and other incidents discerned from the transcript, are indicative of the continual gnawing at the bone of contention in this case, i. e., the measure of damages. During final argument by co-counsel for appellant, he asked the jury to rely on their common experience to determine the worth of a 1957 truck on December 1, 1969. In sustaining an objection on the ground that such was not the issue, the court stated that it was not the issue and for that reason the objection was being sustained. The court was correct in so ruling, as it had many times during the course of the trial, and certainly cannot be found in error for a proper ruling. Argument is made that the transcript cannot fully describe the conduct during the trial. We agree. And it is for this reason that the principle from Huckshold v. St. Louis, I. M. & S. R. Co., 90 Mo. 548, 2 S.W. 794 (1887), through Beesley v. Howe, 478 S.

W.2d 649 (Mo.1972), has been recognized that the trial judge is in the best position to determine the effect of the conduct of both counsel, to restrain excess by either side, and to take appropriate action if reasonable bounds are exceeded. Only if a clear abuse of that broad judicial discretion appears should an appellate court interfere. It is here clear there was no abuse of discretion.

The judgment is affirmed.

WEIER, Acting P. J., and CLEMENS, and McMILLIAN, JJ., concur.