Bub SNOW d/b/a Bub Snow Water
Well Drilling Company, Plaintiff,

v.

ADMIRAL INSURANCE
COMPANY, Defendant.

Civ. No. 84–3003.

United States District Court,
W.D. Arkansas,
Harrison Division.

June 25, 1985.

Steven B. Davis, Harrison, Ark., for plaintiff.

Lynn F. Wade, McAllister & Wade, Fayetteville, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I. Introduction

The instant action arises from a dispute concerning the correct characterization of a contract of insurance. Plaintiff contends that the policy at issue is a "stated value" policy, under which the defendant is liable for the stated value of plaintiff's burned drilling rig at the time of contracting, less any depreciation thereon. Defendant asserts that the policy is an actual cash value policy, under which it is liable only for the cost to repair or replace the drilling rig which was destroyed by fire.

The parties apparently concede that the policy would be classified as a "stated value" policy under the laws of the state of Missouri, but would be viewed as an actual cash value policy under the laws of the state of Arkansas.

Thus, all agree that the "choice of law" determination largely governs the extent of defendant's liability on the policy itself. Further enhancement of liability by imposition of prejudgment interest, statutory penalties, and attorney's fees is also urged.

### II. Background

To understand the circumstances surrounding plaintiff's procurement of the policy at issue, the roles of other participants must be considered, because there were no direct dealings between plaintiff and defendant.

Plaintiff contacted the All Risk Agency ("All Risk") in May, 1982, in Springfield, Missouri. All Risk is an insurance broker licensed in Missouri with a non-resident license in Arkansas. Plaintiff authorized All Risk to obtain price quotations for all of its insurance needs. After further communication with plaintiff regarding equipment values, All Risk contacted Bohrer, Croxdale & McAdoo, Inc. ("BC & M"), in June, 1982. BC & M is a Missouri corporation and an insurance broker for defendant with authority to accept applications on behalf of the defendant.

After All Risk contacted BC & M, BC & M contacted the defendant by telephone. Defendant approved the risk and set the rate. BC & M then contacted All Risk offering the coverage. All Risk obtained authority to accept the offer, and communicated the approval to BC & M on June 22, 1982.

On June 25, 1982, Bub and Thelma Snow, President and Secretary-Treasurer of the plaintiff, visited All Risk's office in Springfield, Missouri, and signed the contract documents, made a down payment on the premium, and arranged financing of the balance of the premium through the Commerce Bank of Springfield, Missouri, and Premium Finance Specialists of Kansas City.

The policy was prepared on July 23, 1982, at BC & M's offices in Springfield, Missouri, and countersigned with a signature stamp on defendant's authority. BC & M requested the premium balance from All Risk, and All Risk paid BC & M in Springfield, Missouri, on August 3, 1982. The policy was issued and delivered by BC & M to All Risk in Springfield, Missouri.

This policy was for a period of one year. In March, 1983, BC & M received approval from defendant to renew the policy at the same premium. BC & M conveyed the offer to renew to All Risk in May, 1983. Plaintiff gave All Risk authority to accept the renewal offer, and All Risk did so.

The documents were prepared and countersigned at BC & M's offices on June 23, 1983. On July 19, 1983, the insured drilling rig was destroyed by fire in the state of Kansas. Plaintiff reported the loss to All Risk which reported it to BC & M. BC & M investigated the loss through Parrett-Harris, Inc., of Joplin, Missouri. Parrett-Harris advised All Risk that the loss was total.

After the instant action was initiated, defendant paid CIT Corporation, a loss payee, the sum of $20,879.60, and deposited $75,400.00 into the registry of the court. Plaintiff was permitted to withdraw this sum by order of this court without prejudice to its claim for additional monies allegedly due under the terms of the policy.

### III. Choice of Law

This court must follow the choice of law rules of the state of Arkansas. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 407, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The decisions of the Arkansas Supreme Court have been characterized by a lack of consistency in choice of law rulings regarding contracts. *Compare Worthington v. Worthington*, 234 Ark. 216, 352 S.W.2d 80 (1962), with *Peppers v. Pennsylvania Door & Sash Co.*, 171 Ark. 521, 285 S.W. 5 (1926).

Traditionally, because there is usually no fixed place for performance of insurance policies, the law of the place of making has been taken as determinative. Leflar, *American Conflicts of Law* § 153 at 314 (3rd ed. 1977). Where an insurer mails to the applicant a policy issued in accordance with the application, it has been held that the contract is "made" when and where the policy is mailed. *State Mutual Fire Ins. Ass'n v. Brinkley Stave & Heading Co.*, 61 Ark. 1, 31 S.W. 157 (1895).

More recently, however, the Arkansas Supreme Court has applied the "most significant relationship" text to choice of law questions in contract cases. *Standard Leasing Corp. v. Schmidt Aviation*, 264 Ark. 851, 576 S.W.2d 181 (1979). In *Schmidt* the court said the place that the contract at issue was "finally consummated" was a "fortuitous fact" and was not of "controlling importance." *Schmidt* at 856, 576 S.W.2d 181. The court applied Arkansas law to the contract although the parties had agreed that the law of the state of Tennessee would govern, because the significant "contacts" with the state of Arkansas rendered the contract an "Arkansas contract."

This court held in *Wright v. Newman*, 539 F.Supp. 1331 (W.D.Ark.1982), *rev'd on other grounds*, 735 F.2d 1076 (8th Cir. 1984), that the Arkansas courts currently apply the "most significant relationship" test to actions *ex contractu.* The Court of Appeals for the Eighth Circuit has reaffirmed this position. *Tiffany Industries v. Commercial Grain Bin Co.*, 714 F.2d 799 (8th Cir.1983) (applying Arkansas law).

Although neither the *Schmidt, Wright* nor *Tiffany Industries* cases involved contracts of insurance, the court is aware of no overriding consideration which mandates a different choice of law rule in the insurance context herein presented from that applicable to contract actions in general.

Very recently the Arkansas Supreme Court has addressed the choice of law issue with regard to contract cases involving usury. In *Snow v. C.I.T. Corp. of the South*, 278 Ark. 554, 667 S.W.2d 465 (1983), the court was faced with a transaction which had a direct connection with four states: the state of negotiation; the state wherein the contract documents were signed and the situs of the property; the state where the financier maintained its principal office, whose laws governed by agreement of the parties; and the state where the property was delivered and used. The court ultimately opted to apply the law of the state chosen by agreement because

the transaction had significant contacts with all four states and the choice of the parties was not unreasonable.

In *Grogg v. Colley Home Center, Inc.*, 283 Ark. 120, 671 S.W.2d 733 (1984), another usury case, the court found the contract to have "substantial connections" with both Arkansas and Oklahoma. The court applied the law of the state which would uphold the contract, in that case, Oklahoma.

Although usury cases present differing policy considerations from those present here, it is clear that the court has carefully scrutinized the various "contacts" with the different states in making the choice of law determinations.

Similarly, in *Yarbrough v. Prentice Lee Tractor Co.*, 252 Ark. 349, 479 S.W.2d 549 (1972), a usury case, the court held that although the negotiations and execution of the contract took place in the states of Arkansas and Louisiana, and the equipment was delivered and used in Arkansas, none of the particular acts involved would establish one state's contacts as being more significant than the other. That being the case, the court applied Louisiana law so as to uphold the validity of the contract.

The *Yarbrough, Schmidt, Snow* and *Grogg* cases indicate that, regardless of the label applied or terminology employed, the court has first evaluated the nature and quantity of each state's "contacts" with the transaction at issue. This is also the conclusion of the Eighth Circuit Court of Appeals expressed recently in *Williams v. State Farm Mutual Automobile Ins. Co.*, 737 F.2d 741 (8th Cir.1984) (interpreting Arkansas law).

Thus, where it is not clear which of several states has the "most significant relationship" to the transaction, the Arkansas Supreme Court has resorted to consideration of other factors in making a choice of law determination in contract cases. *Yarbrough, supra* (upholding validity of contract, presumed intent); *Snow, supra* (agreement of the parties); *Grogg, supra*

("sham" agreement to subvert Arkansas' usury laws, public policy).

■ With these principles in mind, this court must examine the various "contacts" of the state of Missouri and the state of Arkansas with the instant transaction.

Plaintiff initiated the transaction by contacting All Risk in Springfield, Missouri, in May, 1982. All Risk is a broker licensed in Missouri. All Risk, acting as "agent" for plaintiff, contacted BC & M in June, 1982. BC & M is a Missouri corporation acting as an insurance broker for defendant in Missouri. After defendant approved the issuance of the policy, BC & M contacted All Risk in Missouri to offer the coverage. After All Risk obtained authority to accept the offer, it communicated its acceptance to BC & M in Springfield, Missouri. Shortly thereafter, Bub and Thelma Snow visited All Risk's office in Springfield and there signed the documents and made a down payment on the premium. The balance of the premium was financed partly by a bank located in Springfield. The policy was prepared by BC & M in Springfield. All Risk paid BC & M the premium balance on August 3, 1982, in Springfield. The policy was issued and delivered by BC & M to All Risk in Springfield. The loss was reported to plaintiffs' agent in Springfield. A Missouri adjuster investigated the loss. Additionally, the renewal certificate states that the insurance was "procured and developed under the Missouri surplus lines law."

On the other hand, plaintiff is a resident of Arkansas. Neither party "resides" in Missouri. All Risk contacted plaintiff in Arkansas regarding the equipment values. All Risk later contacted plaintiff in Arkansas to obtain authority to accept the offer. At the time of the contract the insured property was located and inspected in Arkansas. Arkansas personal property tax and surplus lines tax was paid in Arkansas. Bub and Thelma Snow are Arkansas residents.

After careful scrutiny, it appears that the contract was originated in Missouri, negotiated primarily in Missouri, and accepted, processed, executed and renewed in

Missouri. The loss was reported in Missouri and investigated by a Missouri company. All of the "actors," other than the plaintiff and defendant, were Missouri citizens or businesses. The locations of the property at the time of contracting (Arkansas) and at the time of the loss (Kansas) are merely "fortuitous."

Although there are without doubt sufficient "contacts" with the state of Arkansas to justify the application of Arkansas law consistently with the requirements of due process (otherwise there would be no "choice of law" question), the state of Missouri has the "most significant relationship" with the instant transaction.

The contract is valid under the laws of both states. The contract contains no choice of law agreement. There is no overriding public policy "compelling" a decision in favor of the law of either state. Neither rule of law is clearly "better" than the other.

Thus, because the contract was "made" in Missouri and because Missouri has the most significant relationship to the entire transaction, the court concludes that the interpretation and effect of the contract should be governed by the laws of the state of Missouri.

■ Defendant argues that plaintiff should be estopped from asserting that Missouri law should govern because plaintiff accepted the policy without rejection for thirteen months and because the policy is an "actual cash value" policy by its own language.

However, if the applicable law renders the instant policy a "stated value" policy, plaintiff cannot be so estopped because it is well settled that "the laws which subsist at the time and place of the making of a contract ... enter into and form a part of it, as if they were expressly referred to and incorporated in its terms." *McArthur v. Smallwood,* 225 Ark. 328, 340, 281 S.W.2d 428 (1955); *Kinard v. Shackleford,* 209 Ark. 244, 190 S.W.2d 12 (1945); *Petty v. Missouri & Arkansas Ry. Co.,* 205 Ark. 990, 167 S.W.2d 895 (1943).

## IV. Missouri Law

■ Under the law of the state of Missouri it appears that if a policy is a stated value policy, state law governs the measure of damages rather than the language of the parties. *Citizens Discount & Investment Corp. v. Dixon,* 499 S.W.2d 231 (Mo.App.1973); *Stahlberg v. Travelers Indemnity Co.,* 568 S.W.2d 79 (Mo.App.1978).

Mo.Ann.Stat. § 379.160 (Vernon 1968) provides, *inter alia:*

... in all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured thereon on said property covering both real and personal property.

This statute could reasonably be interpreted as allowing the parties to agree that the insurer's liability is limited to replacement cost so long as the insurer does not contend that the property was initially overvalued. Additionally, the statute could reasonably be interpreted as being inapplicable to fire losses of personal property alone. However, the Missouri courts have addressed both points in recent years.

In *Duckworth v. U.S.F. & G.,* 452 S.W.2d 280 (Mo.App.1970), the Missouri Court of Appeals held:

The value of personal property which is the subject of a suit in a fire loss case against an insurer is fixed by § 379.160 at the full amount of the insurance policy issued on this property as of the time of the issuance of the policy....

This statement does not *per se* indicate that the parties cannot stipulate to a measure of damages in accordance with replacement costs. However, the court went on to add:

The measure of damages for its total destruction is this value fixed at the date of the policy, less depreciation from that date to time of the fire.

*Duckworth* at 285.

The Missouri courts have applied the valued policy statute to numerous cases not

involving buildings or land. *See Duckworth* at 283 n. 3.

*Citizens Discount, supra,* involved facts similar to those herein presented. In that case a truck-mounted feed mill was destroyed by fire. In the instant case a truck-mounted drilling rig was destroyed by fire.

In *Citizens Discount* the Missouri Court of Appeals held that the replacement value was irrelevant and that the proper measure of damages was the value as fixed by the policy, less depreciation, if any:

> The issue was not at what price *a* truck and mill might be replaced, but by what amount *this* truck and mill depreciated from a stated value....

*Citizens Discount* at 234.

■ The court believes that the instant policy is a stated value policy under Missouri law. One of the endorsements schedules the covered items, listing an amount of insurance for each. The sum of the individual amounts is exactly equal to the total amount of insurance on the face of the policy. The premium charged is based upon a percentage of the dollar amount of insurance. The terminology of the endorsements indicates a specific value for the chassis, rotary drill, and drill stem sections which were destroyed. The values of these individual items were required to be reported to BC & M prior to the preparation of the policy. All Risk has stated that it "believed" the policy was to be a stated value policy (*see* Greenstreet deposition, p. 16; Keffer deposition, pp. 10–11).

In *Huth v. General Accident & Life Assurance Corp.,* 536 S.W.2d 177 (Mo.App. 1976), the above factors were viewed by the court as *indicating* that the policy therein involved was a valued policy. Although the court was not certain whether the policy was "valued" under the statute since the loss was not a *fire* loss, the court added: "Fire policies covering personal property are 'valued' by the statute." *Huth* at 180.

As noted, various aspects of the policy at issue can reasonably be viewed as creating a valued policy, although paragraph 3 of the General Provisions of the policy attempts to limit recovery to the cost of replacement. It is, of course, fundamental that in the event of ambiguity, the contract is to be construed against the preparing party. *American Ins. Co. v. First Nat'l Bank,* 409 F.2d 1387 (8th Cir.1969) (applying Missouri law).

■ Defendant has not argued that Missouri law would limit recovery to the cost of replacement as would Arkansas law, and has limited its argument to the choice of law considerations and the applicability of estoppel. As indicated above, the court concludes that the instant policy is a stated value policy under Missouri law, and that the correct measure of damages to be applied is the stated value of the property at the time of renewal of the policy, less depreciation, if any, as of the time of the fire.

Defendant concedes that "application of Missouri law ... would reform [the policy] into a stated value policy." (Defendant's Brief in Support of Defendant's Response to Plaintiff's Motion for Summary Judgment and Motion by Defendant for Partial Summary Judgment, 7th unnumbered page.) With the exception of the word "reform," the court agrees and now so holds.

Although defendant has made mention of a possible "salvage value" of the drilling rig, the court believes that it has implicitly conceded that the loss was total. Defendant's adjuster, James Harris, advised All Risk three days after the loss that the loss was total. Additionally, defendant has not alleged that the "salvage" is marketable or of substantial value. Further, defendant has tendered into the registry of the court the sum that it alleges constitutes the replacement cost. Finally, the court notes that Missouri adheres to the doctrine of "constructive total loss." *Stahlberg, supra.*

■ Plaintiff next argues that defendant should be estopped from asserting that the property had depreciated subsequent to the renewal. Because the stated value of the

property was $202,600.00 on June 22, 1982, and $202,600.00 as of June 23, 1983, plaintiff contends that defendant should not be allowed to claim that the property depreciated in the 26 days that elapsed from the renewal date to the date of the fire.

This argument is insufficient to demonstrate an estoppel. As a matter of "interpolation" it is sound reasoning that the property was worth $202,600.00 at any time between June 22, 1982, and June 23, 1983. However, this will not support the "extrapolation" argument plaintiff urges. Under Missouri law the defendant is entitled to present proof of depreciation regardless of the stated value of the property on any given date. The argument is strong that, in *fact*, the property did not significantly depreciate in the 26-day period, however, the court is unable to say as a matter of *law* that the property did not depreciate. There is no reason to preclude defendant's proof in this regard.

Plaintiff also seeks prejudgment interest and a statutory penalty and attorney's fee. However, in view of this court's inability to grant a summary judgment because of the unascertained amount of depreciation, if any, any ruling by the court on these issues would be premature and advisory.

The ruling of the court additionally casts some doubt as to whether the amount of liability is "liquidated" or "readily ascertainable" so as to justify prejudgment interest. It also makes unclear plaintiff's right to a statutory penalty or attorney's fee.

### V. Conclusion

The court concludes that Missouri law governs the instant contract and that the policy at issue is a "stated value" policy under that law. This being the case, it will be taken as conclusively established that the destroyed property had the value of $202,600.00 as of June 23, 1983. Therefore, the issues to be tried will be limited to the amount of any depreciation of the insured property subsequent to June 23, 1983.

If the defendant will sufficiently document, within two weeks, its contention that the loss was not total, the court will allow it to present evidence as to this at trial as well as with regard to the depreciation issue. Failing in this, the triable issues will be limited to the depreciation, if any.

The court notes that defendant has not briefed any issues pertaining to prejudgment interest, statutory penalties and attorney's fees. The court directs both parties to brief these issues in light of this memorandum opinion, including choice of law considerations, applicability, and computation methods. Briefs are due within fourteen (14) days.

If the parties can stipulate as to the facts pertaining to the "totality" of the loss and depreciation of the insured property, the court will be able to dispose of the case without the expense and necessity of a trial. If a trial is necessary, the court expects any proof submitted to be significant, real, and substantial with regard to these issues.

Plaintiff's motion for summary judgment and defendant's motion for partial summary judgment will be denied, and the scope of any further proceedings will be limited as set forth above.

A separate order in accordance herewith will be concurrently entered.