**ATLAS CARRIERS, INC., Plaintiff,**

v.

**TRANSPORT INSURANCE COMPANY, Defendant Third Party Plaintiff,**

v.

**Earl PIKE, Third Party Defendant.**

**No. LR–C–82–776.**

United States District Court, E.D. Arkansas, W.D.

Nov. 7, 1983.

Winslow Drummond, Little Rock, Ark., for plaintiff.

James D. Storey, Little Rock, Ark., for defendant.

### ORDER

EISELE, Chief Judge.

Pending before the Court is the motion for summary judgment filed by defendant Transport Insurance Company. Because the Court finds genuine issues of material fact remain, it denies the motion.

This is an action for compensatory and punitive damages stemming from the nonpayment on a collision insurance policy that the defendant issued to the plaintiff. The plaintiff is a motor freight transportation company that operates a fleet of tractor-trailer rigs. The defendant is an insurance company that insures motor freight carriers against losses arising in connection with transportation services. The parties agree that the defendant issued a policy of insurance that listed the plaintiff as a named-insured.

The parties further agree that on or about October 20, 1981, a Peterbilt tractor that the plaintiff had leased[1] was severely damaged in a collision. The dispute at bar arises in the aftermath of plaintiff's unsuccessful attempt to secure payment from the defendant for the damages sustained by the tractor. On November 1, 1982, the plaintiff filed suit due to the defendant's failure to pay the claim.

In Count I of the complaint, the plaintiff states that for more than a year the defendant refused to pay on the loss despite the plaintiff's repeated demands. The plaintiff contended it was entitled to recover $28,500 for the value of the vehicle plus attorneys fees and a twelve percent penalty provided under Ark.Stat.Ann. § 66–3238,[2] and it appears that, at some point after the complaint was filed, the parties settled this issue.

In Count II, the plaintiff seeks consequential damages for the loss in income caused by the immobilization of the damaged tractor.

Count III raises the issues that are most relevant to the pending motion for summary judgment. It states:

Defendant's refusal to honor its contractual obligation to plaintiff was repeatedly made in a willful and malicious manner. This outrageous conduct on the part of the defendant has forced plaintiff to incur unnecessary expenses in pursuing a valid claim which should have been paid promptly. Plaintiff complied with every policy condition, and its every demand for payment was met with invalid "policy defenses" which constituted nothing more than dishonest, malicious, and oppressive conduct on the part of the defendant in its effort to avoid its contractual obligations. This conduct on the part of the defendant has been of a continuing nature and has been pursued in the utmost bad faith. On account of such conduct and bad faith, plaintiff is entitled to recover punitive damages in the sum of $7,500,000.

WHEREFORE, plaintiff prays that it recover of and from the defendant the following:

(a) On Count I the sum of $28,500, a penalty of 12%, and a reasonable attorney's fee;

(b) On Count II the sum of $200,-000.00;

(c) On Count III the sum of $7,500,000;

(d) Its costs and all other proper relief.

Distilled to its basic thrust, Count III asserts that the allegedly dilatory tactics and unfounded objections to coverage attributed to the defendant constitute the tort of bad faith.

The defendant asserts it is entitled to summary judgment on the bad faith claim. It argues that under Arkansas law, the tort of bad faith is quite limited in scope, covering only those instances when "an insurer engages in affirmative conduct which is dishonest, malicious, and oppressive in order to avoid liability...." The defendant suggests that there simply is no evidence that would support the plaintiff's bad faith allegation and that the defendant is consequently entitled to summary judgment. In support of this assertion, it states in its brief:

No evidence is presented that Transport's refusal was based on any other reason than good faith beliefs that Atlas claimed too high a value on the vehicle and that the vehicle may not have been afforded coverage under Atlas' policy. Once Transport determined coverage

---

1. The plaintiff leased the tractor from Mr. Earl Pike, who also is a party to this suit. At varying times, the defendant has alleged that it owes nothing to the plaintiff because the vehicle was owned by Mr. Pike, not by the plaintiff. At this stage, however, the defendant concedes that the plaintiff has an insurable interest in the tractor.

2. Under that statute, the insurer may be liable if, after demand by the insured, it fails to pay a

loss within the time specified in the insurance policy. However, no liability exists under the statute unless the insured recovers the full amount it demanded. *See Alexander v. Pilot Fire & Cas. Ins. Co.,* 331 F.Supp. 561 (E.D.Ark. 1971); *Highlands Ins. Co. v. William Burris Masonry Contractors, Inc.,* 258 Ark. 694, 528 S.W.2d 405 (1975).

was afforded, it promptly paid the claim in full.

Transport did not use harsh or threatening language in its refusal to pay on the policy. There were disputes over the value of the vehicle and whether it was covered.

No evidence is presented that would establish that, at any time, Transport attempted to use its superior economic position to force any type of settlement. Transport has not delayed the trial of this case.

In its response to the defendant's motion, the plaintiff concurs with the defendant's summarization of the law relating to a bad faith tort claim. In fact, the plaintiff asserts it is not seeking a more liberal construction of the elements of the tort of bad faith than that advanced by the defendant. Instead, the plaintiff argues that lingering questions of material fact require the case to be submitted to a jury. The plaintiff asserts that the most critical question—whether the defendant has engaged in dishonest, malicious and oppressive affirma-

tive misconduct—remains to be decided. After reviewing the pleadings, the briefs, and the depositions submitted by the defendant, the Court hesitantly agrees; issues of material fact appear to remain.

Before briefly describing a few of those issues, the Court will make several observations about the nature of the tort of bad faith. At the outset, the Court notes that the tort occupies a relatively nascent and ill-defined position within the spectrum of Arkansas common law. Indeed, in jurisdictions throughout the country, the tort of bad faith is in an incipient stage of development. As the parties have correctly observed, the wellspring of the tort of bad faith in Arkansas is *Findley v. Time Insurance Co.*, 264 Ark. 647, 573 S.W.2d 908 (1978) (In banc). In that case, the Supreme Court of Arkansas announced, essentially in dictum,[3] that

an insurer may be liable in tort ... upon a showing that, without a good faith defense to the insured's claim, it actively engaged in dishonest, malicious, or op-

---

**3.** Although the Court's "adoption" of the tort of bad faith was in dictum, subsequent cases have also suggested that, given the proper factual situation, an action would lie in tort. *See, e.g., MFA Mutual Ins. Co. v. Keller*, 274 Ark. 281, 283, 623 S.W.2d 841 (1981); *Johnson v. Safeco Ins. Co.*, 265 Ark. 9, 576 S.W.2d 220 (1979). Moreover, in *Bandlow v. Mid-American Fire & Marine Ins. Co.*, No. LR–C–80–521 (E.D.Ark. Jan. 4, 1982) (mem. opinion), this Court acknowledged that although the bad faith tort would probably not be recognized by the Arkansas courts in the *third-party* insurance context, the *Findley* case had apparently recognized the tort in the first-party insurance context.

It is, of course, arguable that due to the existence of the statutory remedy provided in § 66–3238, there should be no additional common law remedy. Indeed, it could be forcefully argued that under the doctrine *expressio unius est exclusio alterius,* the legislature's creation of a limited statutory remedy implies that it intended § 66–3238 to be the exclusive tort-related remedy for disgruntled insureds. Indeed, cases in several jurisdictions seem to support this view. *See, e.g., Debolt v. Mutual of Omaha,* 56 Ill.App.3d 111, 115–16, 13 Ill.Dec. 656, 371 N.E.2d 373, 376–78 (1978); *Tano Corp. v. Louisiana Health Service & Indemnity Co.,* 355 So.2d 604, 605 (La.App.1978), *but see Ledingham v. Blue Cross Plan, Hosp. Serv. Corp.,* 29 Ill.App.3d 339, 330 N.E.2d 540 (1975), and even the Eighth

Circuit Court of Appeals has noted in dictum that "no state which has a statutorily prescribed penalty ... as Arkansas, has also permitted the bad faith tort by judicial fiat...." *Robinson v. MFA Mutual Insurance Co.,* 629 F.2d 497, 501–02 n. 5 (8th Cir.1980). *See also Associated Photographers, Inc. v. Aetna Cas. & Surety Co.,* 677 F.2d 1251 (8th Cir.1982). But in spite of the aforementioned case law, this Court cannot say that the Arkansas Supreme Court would fail to recognize the tort of bad faith in the case at bar. Although the two causes of action share several similarities, they are not necessarily parallel. For example, it is obvious that the plaintiff's proof in a bad faith tort case is significantly more difficult to establish than that in an action brought under § 66–3238. In the former, the plaintiff must prove "affirmative misconduct"; in the latter, mere delay after demand for payment (coupled with ultimate recovery of the entire amount sought) will suffice to establish the plaintiff's case. *See* note 2 *supra.* It is conceivable that the Arkansas Supreme Court has envisioned the bad faith tort as a supplemental remedy for those cases in which the insurer's actions are particularly egregious.

In any event, as noted below, the Arkansas Supreme Court may soon provide some guidance on the issue when it decides *Farm Bureau Insurance Co. of Arkansas, Inc. v. Southall,* No. 83–143 (submitted October 31, 1983).

pressive conduct in order to avoid its liability.

*Id.* at 654–55, 573 S.W.2d 908. The Court's opinion is important not only for its apparent adoption of the bad faith tort, but also for its articulation of restrictions on the tort theory. *Findley* makes it clear that *affirmative* misconduct, not merely nonfeasance, by the insurer is a condition precedent to recovery. *See id.* at 652–54, 573 S.W.2d 908. The court found that under the facts of that case mere allegations that the insurer failed to explain why coverage was denied, failure to investigate fully the facts giving rise to the claim, and failure to contact the insured about her claim, were insufficient to make out a claim of bad faith. The Court found that the plaintiff's claim that the insurer had misrepresented the scope of coverage under the policy was also unavailing. *Id.* at 654, 573 S.W.2d 908.

■ The Arkansas Supreme Court has addressed the tort of bad faith in several subsequent decisions. *See, e.g., Johnson v. Safeco Insurance Co.,* 265 Ark. 9, 576 S.W.2d 220 (1979); *MFA Mutual Insurance Co. v. Keller,* 274 Ark. 281, 283, 623 S.W.2d 841 (1981). In *Johnson,* the Supreme Court affirmed the dismissal of a bad faith claim. The appellant's complaint had alleged that the appellee, a surety company, had failed to investigate the appellant's claim and had failed to pay a portion of the earnest money that appellant had provided in connection with a real estate transaction. The trial court dismissed the bad faith tort claim for failing to state facts upon which relief could be granted. The Arkansas Supreme Court agreed, finding that the complaint simply failed to allege the requisite activity on the part of the surety for establishing the tort of bad faith:

> As in *Findley,* the allegation of "bad faith" is a conclusion of law referring only to the defendant's failure to adequately investigate the claim and its failure to pay the claim. There is no allegation of affirmative wrongdoing on the part of the defendant. Consequently, for the reasons stated in *Findley,* the complaint is demurrable.

*Id.* at 10, 576 S.W.2d 220. It is quite clear that under *Findley* and *Johnson,* a plaintiff must allege some affirmative wrongdoing on the part of the defendant before liability can attach.[4]

Unfortunately, the Arkansas courts have not illuminated precisely what *would* constitute such affirmative misconduct. Yet in light of the clear analogies that may be drawn between the tort of bad faith and the tort of failure to settle within policy limits, *see Findley,* 264 Ark. at 649, 573 S.W.2d 908; *Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 271 N.W.2d 368, 375 (1978), it appears that the latter class of cases may provide some guidance for ascertaining the existence of bad faith. *See, e.g., The Home Indemnity Co. v. Snowden,* 223 Ark. 64, 264 S.W.2d 642 (1954).

■ The question remains, would the allegations made by the plaintiff, if proven, make out a claim of bad faith? If not, then regardless of the facts proffered by the plaintiff, the defendant would be entitled to summary judgment.

As noted above, the essence of the plaintiff's bad faith claim rests on the defendant's allegedly dilatory tactics and unfounded objections to making full payment on the claim. Although not crystal clear,

---

4. This is not to say that allegations that are related to those advanced in the two cases would necessarily fail to make out a bad faith claim. *Findley* and *Johnson* involved Rule 12(b)(6) motions. Thus, the bad faith claims in each case were dismissed because the complaints failed to allege *facts* upon which relief can be granted.

*Cf.* Fed.R.Civ.P. 12(b)(6) (dismissal for failure to state a *claim* upon which relief can be grant-ed). Had the facts alleged in the two state cases been more developed, perhaps the allegations would have withstood a motion to dismiss. By the same token, in light of the slightly more liberal nature of the Federal Rule 12(b)(6), it is at least conceivable that facts analogous to those asserted in *Findley* and *Johnson* might be adequate to avert dismissal.

the plaintiff's theory apparently is that as early as May of 1982, the defendant knew that the plaintiff was entitled to the full amount of damages it claims and yet the defendant refused to pay. Instead, according to the plaintiff, the defendant successively raised a string of objections, none of which had any merit. The plaintiff contends that the defendant *knew* that the objections were meritless. For example, the plaintiff asserts that the defendant raised a number of wholly groundless allegations that the policy did not cover the damages claimed by the plaintiff. In its brief, the plaintiff states:

> This is purely and simply a case of an insurance company trying unsuccessfully to chisel on a claim. Any "good faith" on the part·of Transport evaporated in May 1982, when Mr. Kissinger suggested that the company's settlement offer be increased. Thereafter, the company elected to assert policy defenses having no basis in fact. From May 19, 1982, through the month of October, 1982, the company's position was that it owed absolutely nothing to Atlas. As one policy defense was knocked down, another was set up. * * * When finally pushed to the wall by a lawsuit, the company reiterated its "no payment" position and, simultaneously, offered to pay what Atlas had earlier demanded. And when Atlas stated that it was no longer interested in settlement, but wanted the actual amount of the loss paid, Transport denied once again that it owed anything but agreed to pay the amount of the loss, penalty, and attorney's fee. If this isn't bad faith, what is?

**5.** Under the clause, the plaintiff would not be liable for any loss or damage "while it is being operated by or is in the care of said driver." The term "said driver" was apparently meant to refer to the lessor of the vehicle. Under such a construction, if the vehicle were damaged while being driven by the plaintiff's drivers, the clause would not apply. The plaintiff argues that before the insurer could know whether the clause applied, it would first have to know whether the driver of the vehicle was employed by the plaintiff or by the lessor. Only in the latter instance would the clause apply and, hence, since the plaintiff would not be liable for the damages, it would lack an insurable interest in the vehicle.

As noted above, at one point the defendant denied coverage based on a provision in the lease agreement between the plaintiff and the vehicle owner, Mr. Pike.[5] The plaintiff claims that this denial of coverage was utterly without basis and that, as exemplified by the deposition of one of the defendant's agents, Mr. Carl Campbell, the company simply trumped-up the argument without having any reasonable basis for it. *See* deposition of Mr. Campbell at 93–96. The plaintiff suggests that the defendant knew the argument was specious. *Cf. Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916, 924–25 (Ala.1981) (liability if insurer lacks lawful basis for refusal to honor a claim coupled with actual knowledge that no lawful basis exists).

Another basis of the plaintiff's contentions pertains to the dispute over the value of the damaged tractor. The defendant asserted that one of the reasons it did not pay the claim was that it, in good faith, disputed the tractor's value as claimed by the plaintiff. The plaintiff contends that after a certain point, the defendant knew that the value asserted by the plaintiff was correct and yet it persisted in offering a lower figure to the plaintiff by way of settlement offer. In support of this assertion, the plaintiff suggests that even though one of the defendant's claim representatives, Mr. Gerald Kissinger, told his superiors that the tractor's value was indeed higher than the amount the defendant had offered and recommended that the defendant offer more money to the plaintiff, the defendant failed to do so. Arguably,

Mr. Campbell, who was acting on behalf of the defendant and who ostensibly conceived of this policy defense, admitted in his deposition that he did not know who employed the driver when the accident occurred. *See* deposition of Mr. Campbell at 94–96. The plaintiff argues that by advancing this defense without even knowing who employed the driver, the defendant was raising a totally unfounded defense. According to the plaintiff, a jury could infer dishonesty or maliciousness from this. *Cf. Anderson v. Continental Insur. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376 (1978) (plaintiff may establish bad faith by showing defendant lacked a reasonable basis for denying the claim.)

Mr. Kissinger's deposition lends some support to this contention.

The plaintiff also suggests that the defendant's offer to pay the disputed amount after the complaint was filed also implies bad faith.

At this stage, the Court cannot say that, given the factual background in this case, a jury could not infer bad faith from such conduct. *See Mason v. Tennessee Farmers Mutual Insurance Co.*, 640 S.W.2d 561 (Tenn.App.1982); *Gulf Atlantic Life Insurance Co. v. Barnes*, 405 So.2d 916, 925 (Ala.1981). After listening to all of the evidence and considering the reasonable inference that might be drawn therefrom, the Court may conclude otherwise and grant a motion for directed verdict in the defendant's favor. But at this point, the Court simply cannot say that the evidence and the reasonable inferences permitted will not present a jury issue under the applicable law.

Therefore, after reviewing the briefs and depositions submitted by the parties, the Court concludes that, although it is a close question, genuine issues of material fact possibly remain. The defendant's motion must therefore be denied.

Subsequent developments in Arkansas case law between the present time and the trial date might persuade the Court to re-evaluate its position. Specifically, the Court is aware that pending before the Arkansas Supreme Court is a case that may unlock some of the mysteries surrounding that court's attitude toward the tort of bad faith. That case, *Farm Bureau Insurance Co. of Arkansas, Inc. v. Southall*, No. 83–143, was submitted on October 31, 1983. It is conceivable that the Supreme Court will announce its opinion before the trial in the case at bar. If so, and if the defendant believes that the decision has a significant bearing on this case, the Court will entertain a renewed motion at that time. For the present, however, the defendant's motion for summary judgment must be denied.

IT IS, THEREFORE, ORDERED that the defendant's motion for summary judgment be, and it is hereby, denied.