Wynona V. BELL and Zola L. Culwell, Plaintiffs,

v.

KANSAS CITY FIRE AND MARINE INSURANCE COMPANY and Bill Williamson, Defendants.

Civ. No. 85–2004.

United States District Court, W.D. Arkansas, Fort Smith Division.

Aug. 20, 1985.

---

Stephen G. Hough, Daily, West, Core, Coffman & Canfield, Fort Smith, Ark., for plaintiffs.

E.C. Gilbreath, Jones, Gilbreath & Jones, Fort Smith, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiffs initiated this action on January 3, 1985, against defendants, essentially alleging a claim based upon the tort of "third-party" insurance "bad faith." Plaintiffs specifically allege that defendant, Kansas City Fire and Marine Insurance Company, and its agent, defendant Williamson, failed to acknowledge and act promptly with respect to plaintiffs' claims, failed to promptly investigate the claims, failed to pay the claims without reasonable investigation, and failed to effectuate a prompt and equitable settlement of plaintiffs' claims.

The underlying facts involve a vehicular collision in Poteau, Oklahoma, wherein defendants' insured, Helen Loyd Pate, collided with the rear of the vehicle operated by plaintiffs. In each of two counts plaintiffs seek $25,000.00 in compensatory damages and $250,000.00 as punitive damages.

By letter dated April 3, 1985, this court denied defendants' motion to dismiss, concluded that jurisdiction is present and that the law of the state of Arkansas governs the disposition of this cause. The court denied the motion based upon Rule 12(b)(6), primarily because of the reluctance of courts of appeal to affirm dismissals based upon that rule.

On July 1, 1985, defendants renewed their motion to dismiss and moved for summary judgment. The matter is now ripe for resolution.

It is well-settled that this court must follow the choice of law rules of the state of Arkansas. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Arkansas has adopted a flexible approach in recent years which requires attention to "choice-influencing" considerations in actions *ex delicto*. *See Wallis v. Mrs. Smith's Pie Co.*, 261 Ark. 622, 550 S.W.2d 453 (1977) (en banc). *See also Wright v. Newman*, 735 F.2d 1073 (8th Cir.1984). These "considerations" include (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum government's interests, and (5) application of the better rule of law.

The court has recognized the choice of law issue presented in this action. The court had indicated in its letter of April 3, 1985, that it believed that the law of the state of Arkansas would govern the case. Upon reconsideration in the context of defendants' renewed motion to dismiss and motion for summary judgment, the court concludes that Oklahoma law controls.

In actions *ex contractu*, under traditional choice of law rules, the law of the place of the "making" of the contract has been considered determinative. *See State Mutual Fire Ins. Ass'n v. Brinkley Stave & Heading Co.*, 61 Ark. 1, 31 S.W. 157 (1895). More recently, however, Arkansas courts have approved the application of the "most

significant relationship" test to choice of law questions in contract cases. *See Standard Leasing Corp. v. Schmidt Aviation,* 264 Ark. 851, 576 S.W.2d 181 (1979); *Wright v. Newman, supra; Tiffany Industries v. Commercial Grain Bin Co.,* 714 F.2d 799 (8th Cir.1983); *Williams v. State Farm Mutual Automobile Ins. Co.,* 737 F.2d 741 (8th Cir.1984); *Snow v. Admiral Ins. Co.,* 612 F.Supp. 206, at 208 (W.D. Ark.1985).

As Professor Emeritus Robert Leflar notes in his treatise:

It is fair to say that the policies which underlie the standard choice-influencing considerations constitute, either tacitly or expressly, the basis for most contracts—choice-of-law decisions today, and that this is true regardless of which traditional explanations the opinions employ.

Leflar, *American Conflicts Law* § 150 at 311 (3rd ed. 1977).

Where there is no overriding consideration present, such as the preference for validation, stipulation of the parties, or countervailing strong public policy, the modern trend is to apply the law of the state with the most significant relationship to the transaction. *See Snow, supra,* at 209.

■ In this case that state is the state of Oklahoma. The policy provides that it is issued in accordance with the laws of the state of Oklahoma as "required by the Compulsory Insurance Law of Oklahoma." Additionally, plaintiffs Bell and Culwell are citizens of Oklahoma, as is Helen Loyd Pate, the alleged insured. The accident occurred in Oklahoma. Oklahoma law and rules of the road would govern the liability, if any, of Helen Loyd Pate to the plaintiffs.

Although neither the proper choice of law applicable to the underlying accident nor the choice of law applicable to the underlying contract of insurance are necessarily dispositive of the choice of law decision with regard to the "bad faith" tort alleged, both militate in favor of the application of Oklahoma law. Only if Oklahoma law renders Helen Loyd Pate liable to the plaintiffs for damages sustained in the accident would the defendant, Kansas City Fire and Marine Insurance Company, be obligated to anyone on the contract of insurance. Further, only if Oklahoma law recognizes a duty on the part of Kansas City Fire and Marine Insurance Company, as insurer of Helen Loyd Pate, could there be any duty owed to any third parties. Any duty to fairly settle the claim, investigate it, or communicate with regard to it would necessarily have arisen under Oklahoma law.

Because liability for the accident is governed by Oklahoma law and any liability on the contract would be governed by Oklahoma law, no duty to any third parties could conceivably have come into existence unless Oklahoma law recognizes the underlying liabilities. Put another way, if for some reason Oklahoma law recognized no liability on the part of Helen Loyd Pate for the underlying accident, then Kansas City Fire and Marine Insurance Company would have no liability as insurer. Similarly, if for some reason, Oklahoma law recognized no duty on the part of Kansas City Fire and Marine Insurance Company based on the contract, there is no duty owed to third persons which could theoretically be breached.

Even if an insurer owes any duty at all to third persons, this duty will not usually be implicated unless the insurer owes a duty of some sort to the insured. Had there not been a contract of insurance between Helen Loyd Pate and Kansas City Fire and Marine Insurance Company, obviously Kansas City Fire and Marine Insurance Company would owe no duty to the present plaintiffs.

It would be incongruous for this court to determine the liability of Helen Loyd Pate to the plaintiffs under Oklahoma law, and any contractual duty arising therefrom on the part of Kansas City Fire and Marine Insurance Company under Oklahoma law, and then apply the law of the state of Arkansas to determine the liability of Kansas City Fire and Marine Insurance Company to third parties who are citizens of Oklahoma merely because plaintiffs crossed the border into Arkansas to bring suit.

Although some of the alleged acts and omissions on the part of defendant Williamson occurred in Arkansas, the location of these acts and omissions is a "fortuitous fact." *Schmidt, supra.* Thus, the court concludes that the law of the state of Oklahoma governs the duty owed by defendants to the plaintiffs.

The court believes that *Allstate Insurance Co. v. Amick,* 680 P.2d 362 (Okla. 1984), is dispositive. In *Amick,* plaintiffs brought a direct action against the liability insurance carrier for an automobile operated by the insured which was involved in an accident with the plaintiffs. The Oklahoma Supreme Court held that such an action is not recognized in Oklahoma:

> This single duty of dealing fairly and in good faith with the insured arises from the contractual relationship. In the absence of a contractual or statutory relationship, there is no duty which may be breached.

*Amick, supra,* at 365.

■ Because Oklahoma law is controlling, and because Oklahoma does not recognize a third-party claim against an insurer based upon a breach of duty to act in "good faith," the court concludes that defendants are entitled to judgment as a matter of law.

Although the court has concluded that the substantive law of the state of Oklahoma governs the disposition of this litigation, the court remains unconvinced that plaintiffs' claims would be recognized in the state of Arkansas.

In *Greer v. Mid-West Nat'l Fire & Casualty Ins. Co.,* 434 F.2d 215 (8th Cir.1970), the Eighth Circuit, applying Arkansas law, concluded that a third party may not maintain an action against a tortfeasor's liability insurance carrier based on a theory of wrongful refusal to settle the claim. Because Arkansas had no direct-action statute which was applicable to the matter before the court, the Eighth Circuit in *Greer* declined to extend Arkansas law by judicial fiat:

> It is not the function of a court to usurp the policymaking rights of the legislature. To nullify this statute (Ark.Stat. Ann. § 66–4001) should be the act of the

legislature which passed it.... We will not disregard the expressed intention of the Arkansas legislature and in effect re-write this statute to reach the result plaintiff desires.

*Greer, supra,* at 217.

Currently, *Aetna Casualty and Surety Company v. Broadway Arms Corp.,* 281 Ark. 128, 664 S.W.2d 463 (1983), is the leading Arkansas decision. *Broadway Arms* was a case involving the bad faith tort in an action brought by the insured against the insurer, *i.e.,* a "first-party" claim of bad faith. The Arkansas Supreme Court said:

> We have previously recognized that bad faith is an actionable tort in Arkansas. In discussing the tort of bad faith in *Findley v. Time Ins. Co.,* 264 Ark. 647, 573 S.W.2d 908 (1978), we cited the earlier case of *Members Mutual Ins. Co. v. Blissett,* 254 Ark. 211, 492 S.W.2d 429 (1973), as authority for the premise that the tort of bad faith is an extension of the well established rule through which a liability insurance company can be held accountable in tort for failure to settle a claim within the policy limits. Although *Blissett* was decided on the question of negligence on the part of an insurer for failure to settle a third party claim within the policy limits of its insured, it did state that the action was a separate tort action.

*Broadway Arms, supra,* 664 S.W.2d at 465.

The court additionally held that neither the Arkansas Trade Practices Act, Ark. Stat.Ann. §§ 66–3001 *et seq.,* nor Arkansas' penalty-and-fees statute, Ark.Stat.Ann. § 66–3238, preempt the area upon which the tort of bad faith is founded.

In *Atlas Carriers, Inc. v. Transport Ins. Co.,* 584 F.Supp. 50 (E.D.Ark.1983), Chief Judge Eisele, in a "first-party" bad faith case, reviewed Arkansas precedent in this area and concluded:

> Although the (Arkansas Supreme) Court's "adoption" of the tort of bad faith was in dictum, subsequent cases have also suggested that, given the prop-

er factual situation, an action would lie in tort (citations omitted). Moreover, in *Bandlow v. Mid-American Fire & Marine Ins. Co.*, No. LR–C–80–521 (E.D. Ark. Jan. 4, 1982) (mem. opin.), this Court acknowledged that although the bad faith tort would probably not be recognized by the Arkansas courts in the *third-party* insurance context, the *Findley* case had apparently recognized the tort in the first-party insurance context (emphasis added).

*Atlas, supra,* at 52 n. 3.

In *Broadway Arms, supra,* the Arkansas Supreme Court referred to a "third-party" tort: "Bad faith may give rise to either first or third party claims." *Broadway Arms, supra,* 664 S.W.2d at 465.

In *Employers Equitable Life Ins. Co. v. Williams,* 282 Ark. 29, 665 S.W.2d 873 (1984), decided less than three weeks after *Broadway Arms,* the Arkansas Supreme Court again specifically referred to the "third-party" tort:

An insurance company may incur liability for the first-party tort of bad faith when it affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured (*citing Broadway Arms, supra*). The third-party tort of bad faith is the negligent failure of an insurer to settle a third-party claim within the policy limits. *See Members Mutual Ins. Co. v. Blissett,* 254 Ark. 211, 492 S.W.2d 429 (1973); *Findley v. Time Ins. Co.,* 264 Ark. 647, 573 S.W.2d 908 (1978); and *M.B.M. Co. v. Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980).

Although these statements from *Broadway Arms* and *Williams* arguably support plaintiffs' argument that Arkansas courts would recognize the third-party bad faith claim alleged in this case, it is clear that the Arkansas Supreme Court, in referring to the "third-party tort of bad faith" in the passages quoted, was referring to the type of "third-party claim" referred to in *Blissett, i.e.,* the liability of an insurer in tort to its *insured* arising from the fraudulent, negligent, or bad faith refusal to investigate and settle a claim by a third party against the insured within the policy limits. This tort is based upon the conflict of interest between the insurer and the insured, as demonstrated by the following example postulated in *Findley:*

Suppose, for example, that the insurer has issued a $10,000 automobile liability policy. As the result of a traffic collision the insured is sued for $25,000. The plaintiff offers to settle for $10,000. If the insurance company refuses to settle for more than $8,000, it is risking only $2,000 of its own money against the possibility that its insured may be held liable for the full $25,000, a loss of $15,000 above the protection of the policy. That conflict of interest has led the courts to hold, as we did in *Blissett* and earlier cases, that the insurance company may be liable for fraud, bad faith, or negligence if it fails to investigate and settle a claim against its insured.

*Findley, supra,* 264 Ark. at 649, 573 S.W.2d 908.

Clearly, this type of "third-party" tort of "bad faith," the type referred to in *Broadway Arms* and *Williams, supra,* is not presented in the instant case. This court concurs with Chief Judge Eisele's conclusion in *Atlas* that the bad faith tort of the type alleged in the instant case "would probably not be recognized by the Arkansas courts in the third party insurance context...." *Atlas, supra,* at 52 n. 3.

Accordingly, the court concludes that even if Arkansas law governs the instant action, which the court has found is not the case, no such cause of action as is pled by plaintiffs herein is or would be recognized by the Arkansas courts.

Finally, the court has serious doubts that plaintiffs have set forth sufficient facts to fall within the purview of the third-party "bad faith" tort, even if it were recognized in either Arkansas or Oklahoma. In the first-party context, such an action must be based on facts which indicate "affirmative misconduct by the insurance company, without a good faith defense, and ... the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its

liability...." *Broadway Arms, supra,* 664 S.W.2d at 465. The court made clear that such a first-party claim "cannot be based on a good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer." Negligence or bad judgment on the part of the insurer is not actionable. *Broadway Arms, supra.* "Actual malice," "hatred, ill will or a spirit of revenge" is required. *Broadway Arms, supra,* 664 S.W.2d at 465.

Even if, as plaintiffs urge, the depositions indicate that the insurer was aware of the accident within a week of its occurrence (which was May 1, 1984), and if defendant Williamson did not contact the plaintiffs until August, 1984, and if further, defendant Williamson did not request any medical records until October 12, 1984, the court doubts that such action exemplifies actual malice, hatred, ill will, or a spirit of revenge.

It is not factually disputed that defendant Williamson set up $2,000 reserves for each claimant upon interviewing them, and it is agreed that all estimates of damage to the automobile were in the $400 range. Given the fact that there is no presumption of fault from the fact of a rear-end collision, at least in Arkansas, *Schaeffer v. McGhee,* 286 Ark. 113, 689 S.W.2d 537 (1985), the fact that plaintiff Culwell was unable to state whether there was a squeal of brakes prior to impact or whether plaintiffs' vehicle was even moved by the impact, plaintiff Culwell described the damage as a "scratch" on the bumper, and the fact that neither party was issued a traffic citation, the court is highly doubtful that the conduct of defendants would be factually actionable even if the third-party tort was to be legally recognized in Oklahoma or Arkansas. However, because defendants are entitled to judgment as a matter of law on plaintiffs' third-party bad faith insurance tort claims, the court need not decide whether plaintiffs have supported their opposition to defendants' motion for summary judgment with sufficient factual documentation to preclude the award of summary judgment. The "facts," when viewing them entirely as plaintiffs urge,

simply do not give rise to a cause of action in their favor. The tort upon which they sue simply does not exist in Oklahoma nor in Arkansas at this time.

The court therefore concludes that defendants are entitled to summary judgment in accordance with Rule 56, Fed.R.Civ.P.

A separate judgment in accordance herewith will be concurrently entered.