IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JASON C. POWELL, ESQ., | : | |
| as personal representative of the | : | |
| ESTATE OF MARK KRIEGER, | : | |
| | : | |
| Plaintiff, | : | C.A. No. K17C-11-003 JJC |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| AMGUARD INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION AND ORDER**

Submitted: August 23, 2019
Decided:  September 19, 2019

***Upon Defendant's Motion for Summary Judgment – GRANTED, in part and
DENIED, in part***

John S. Spadaro, Esquire, John Sheehan Spadaro, LLC, Smyrna, Delaware, Attorney
for Plaintiff.

Thaddeus J. Weaver, Esquire, Dilworth Paxson, LLP, Wilmington, Delaware,
Attorney for Defendant.

**Clark, J.**

Defendant AmGuard Insurance Company ("AmGuard") moves for summary judgment against the Estate of Mark Krieger ("the Estate"), the Plaintiff. The facts of record, when viewed in the light most favorable to the Estate, support a reasonable inference that AmGuard delayed paying benefits to Mr. Krieger without reasonable justification. Accordingly, a factual issue remains regarding whether AmGuard acted in bad faith. The scope of the Estate's potential compensatory damages for that aspect of the claim, however, is limited to interest due on a less than four month delay in payment of Temporary Total Disability ("TTD") benefits. Furthermore, evidence of record, viewed in the appropriate light, could support a jury's reasonable inference that AmGuard acted recklessly by (1) delaying its investigation of the claim, and (2) delaying its payment of it.

For these reasons and those discussed herein, AmGuard's motion for summary judgment must be **DENIED** regarding the issues of bad faith and punitive damages. AmGuard's alternative motion for partial summary judgment regarding the unavailability of unliquidated damages must be **GRANTED.**[1]

## I.    Facts of Record

The facts referenced herein are those of record viewed in the light most favorable to the Estate. Mr. Krieger suffered a work injury on May 22, 2017. Thereafter, on June 5, 2017, AmGuard became aware of Mr. Krieger's claim. That same day, AmGuard informed Mr. Krieger that it could not accept or deny his claim because of a "lack of medical documentation," but hoped to complete its investigation within 30 days. The following day, June 6, 2017, an AmGuard adjuster spoke with a representative at Mr. Krieger's place of employment, Hero Demolition.

---

[1] AmGuard's motion also sought summary judgment regarding Count I of the amended complaint that sought a declaratory judgment. The Estate withdrew that claim, with AmGuard's consent.

During the conversation, the Hero Demolition representative conveyed his suspicions that, at the time of his injury, Mr. Krieger was at the job site early in order to steal the company's copper.

On June 12, 2017, Mr. Krieger received an MRI. The MRI report referenced nine separate bone fractures in his foot and ankle, and AmGuard received the report on July 7, 2017.[2] Prior to that date, AmGuard had also received Mr. Krieger's emergency room records. Notwithstanding the records and report, AmGuard did not accept Mr. Krieger's claim. Instead, it delayed a decision regarding his claim because of (1) "red flags" regarding Mr. Krieger's possible drug use,[3] and (2) Hero Demolition's theft suspicion. AmGuard, however, took no action to investigate the allegedly illegal drug use or theft allegation at any point between June 6, 2017 and when it received the MRI report on July 7, 2017.[4]

Delay continued. One month later, on August 8, 2017, AmGuard first informed Mr. Krieger's attorney that it was withholding benefits based on the alleged theft and because of a new allegation that Mr. Krieger impermissibly used the forklift involved in his injury.[5] Another month had passed, and AmGuard had taken no action to investigate the employer's claims. When AmGuard notified Mr. Krieger's attorney about these "red flags," *Mr. Krieger's attorney* began what was the first investigation regarding Hero Demolition's claims. Namely, he interviewed

---

[2] Pl. Op., Ex. A. at 85.

[3] Def. Rep., Ex. 4 (recording for the first time on July 27, 2019, that "there are a number of red flags on the file"); *Id.* at Ex. 6 (testifying in a Rule 30(b)(6) deposition that "there's a very tragic and serious problem with opioid abuse going on . . . this is kind of the classic thing we see on a medical record that would indicate . . . classic drug seeking behavior.").

[4] Def. Rep., Ex. 4. The adjuster's notes dated from June 8, 2017 to July 27, 2017 make no reference to the theft allegation, or to any investigation done on the part of AmGuard regarding such claims. Instead, they note only the receipt of Mr. Krieger's file, the statements and incident report sent from Hero Demolition, the emergency room records, and the MRI report.

[5] AmGuard provides no explanation for why this second reason would impact its payment of a workers compensation claim. Regardless, AmGuard never communicated either reason for withholding benefits to Mr. Krieger or his lawyer *in writing* as required by statute.

3

some of Mr. Krieger's co-workers. He then relayed their information to AmGuard, prompting AmGuard's representative to interview one of the co-workers in late August.[6] After that, AmGuard immediately concluded that the employer's theft and impermissible use of a forklift allegations were false.

Following these exchanges, the parties contested the severity of Mr. Krieger's disability and whether attorney fees were appropriate. The parties did not agree about the amount due until late in September 2017. By that point, Mr. Krieger had received no income for four months. AmGuard generated Mr. Krieger's first check for lost wage benefits on September 29, 2017, and issued it on October 2, 2017. AmGuard continued to pay benefits to Mr. Krieger until he died from unrelated causes in 2018.

## II.    The Parties' Arguments

First, AmGuard argues that the Estate's bad faith breach of contract claim fails because AmGuard did not unjustifiably delay its investigation or payment of benefits. AmGuard emphasizes that it acknowledged the claim on the day it was made, that the Compensation Agreement was completed in a shorter amount of time than the average for 2017, and that its expert opines that AmGuard handled the claim in a timely and appropriate manner. AmGuard also argues that its use of a defense medical expert ("DME") was proper under Delaware statutory law, particularly in light of conflicts in some of the medical reports. Second, AmGuard argues the Estate's claim for unliquidated damages is unavailable in this bad faith contract action. Third, AmGuard argues that punitive damages are unavailable because the evidence of record does not support an inference that AmGuard acted in a willful or

---

[6] Def. Rep., Ex. 8 (recording that an adjuster "spoke to witness, confirmed employer is lying. said they had permission to use the forklifts from steve, the supervisor. said mark was working when the injury occurred.").

4

malicious manner or that it acted recklessly. AmGuard again emphasizes that it paid the benefits within four months. It also emphasizes the aforementioned "red flags" justifying the delay in payment.

The Estate counters that the facts surrounding AmGuard's claims handling provide sufficient evidence for a reasonable juror to conclude that AmGuard unjustifiably delayed paying lost wage benefits and acted indifferently to Mr. Krieger's circumstances. Specifically, the Estate claims AmGuard failed to investigate with reasonable diligence and promptness, prioritized suspicions, considered "bogus" theories, mislead Mr. Krieger as to its basis for its coverage position, and denied him a chance to contest its position.

### III.    Summary Judgment Standard

Summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[7] The Court must view the evidence in the light most favorable to the non-moving party.[8] The burden of proof is initially on the moving party.[9] However, if the movant meets his or her initial burden, then the burden shifts to the non-moving party to demonstrate the existence of material issues of fact.[10] The non-movant's evidence of material facts in dispute must be sufficient to withstand a motion for judgment as a matter of law and sufficient to support the verdict of a reasonable jury.[11]

---

[7] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[8] *Brozaka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[9] Super. Ct. Civ. R. 56(e); *Moore*, 405 A.2d at 680 (Del. 1979).
[10] *Id*. at 681 (citing *Hurtt v. Goleburn*, 330 A.2d 134 (Del. 1974)).
[11] *Lum v. Anderson*, 2004 WL 772074, at *2 (Del. Super. Mar. 10, 2004).

5

## IV.    Analysis

AmGuard primarily argues that the record contains insufficient evidence for a reasonable jury to infer that AmGuard acted "clearly without reasonable justification." Given this lack of evidence, AmGuard further argues that the Estate cannot identify evidence in the record permitting an inference of recklessness. Because the Court's summary judgment analysis regarding both of these issues turns so heavily on the circumstances relevant to AmGuard's state of mind, they are best addressed together. When doing so, the Court finds that there are sufficient facts of record for a jury to reasonably infer both. With regard to compensatory damages, the Estate's claim for non-liquidated damages is unavailable as a matter of law. Furthermore, the Estate does not identify evidence of record supporting a compensatory damages award to a reasonable degree of certainty.

### A.    Bad Faith Insurance Claims

Because an insurance policy is a contract between an insurer and insured, it includes an implied covenant of good faith and fair dealing.[12] An insurer's duty of good faith extends to third-party beneficiaries: the employees of an employer that an insurance company has promised to pay.[13] An insurer acts in bad faith (and breaches the implied covenant of good faith) when it refuses to honor its obligations and lacks reasonable justification for its refusal.[14] More specifically, an insurer breaches this covenant of good faith when in bad faith it delays processing a claim or terminates payment of one.[15] It also breaches its obligation when it unjustifiably delays

---

[12] *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1274–75 (Del. 2016).
[13] *Pierce v. International Ins. Co. of Ill.*, 671 A.2d 1361, 1366 (Del. 1996) (citing Restatement (Second) of Contracts § 304).
[14] *Connelly,* 135 A.3d at 1274–75; *Pierce*, 671 A.2d at 1367; *Tackett v. State Farm Fire & Casualty Ins., Co.*, 653 A.2d 254, 265 (Del. 1995).
[15] *Tackett*, 653 A.2d at 264.

6

investigating a claim.[16]  A mere delay in investigating a claim or paying benefits does not alone establish an insurer's bad faith if there was a reasonable justification for the insurer's failure to do so.[17]  Nevertheless, an insured does not need to "come forward with a smoking gun to survive summary judgment. In an appropriate case, inferences from facts can lead to a triable bad faith claim."[18]

In these claims, recoverable compensatory damages are generally limited to those that are direct or consequential.[19]  In addition, the special nature of an insurance relationship creates an exception that permits punitive damages.[20]  Mere bad faith delay or denial, or an unreasonable or unjustified stance do not alone justify punitive damages.[21]  To justify them, "the denial of the coverage [must also be] willful or malicious … [or] the bad faith actions of an insurer [must be] taken with reckless indifference or malice toward the plight of the [insured]."[22]

In *Tackett v. State Farm,* the Delaware Supreme Court best described the nature of an insurance punitive damages claim.  It recognized that:

> [t]he penal aspect and public policy considerations which justify the imposition of punitive damages require that they be imposed only after a close examination of whether the defendant's conduct is "outrageous," because of "evil motive" or "reckless indifference to the rights of others." . . . Mere inadvertence, mistake or errors of judgment which constitute mere negligence will not suffice. It is not enough that a decision be wrong. It must result from a conscious indifference to the decision's foreseeable effect.[23]

---

[16] *Id.*

[17] *Id.* at 266.

[18] *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 516 (2016).

[19] *Id.* at 512.

[20] *Id.* (citing *Tackett*, 653 A.2d at 266).

[21] *Tackett*, 653 A.2d at 266.

[22] *Pierce*, 671 A.2d at 1367.

[23] *Tackett*, 653 A.2d at 265 (quoting *Jardel v. Hughes,* 523 A.2d 518, 529 (Del. 1987) and Restatement (Second) of Torts § 908, cmt. b (1979) (citations omitted)).

7

Moreover, "[p]unitive damages are recoverable where the defendant's conduct exhibits a wanton or willful disregard for the rights of plaintiff. For a defendant's conduct to be found willful or wanton, his or her conduct must reflect a 'conscious indifference' or 'I don't care' attitude."[24] Thus, at its least level of culpability, the state of mind necessary to support punitive damages is the disregard of an insured's rights with an "I don't care attitude."

Generally, where a litigant's state of mind is an element of a claim, summary judgment is inappropriate because of the highly factual nature of the issue.[25] Summary judgment is frequently denied in cases turning on a party's intentions.[26] Likewise, "[w]hether an insurer's denial of coverage was made in bad faith requires an inquiry into the insurer's motives."[27] A business entity's state of mind "can be proved only by showing the state of mind of its employees."[28]

## B. AmGuard's State of Mind

The Court's decision regarding bad faith and punitive damages turns on (1) the factual nature of the necessary inquiry and (2) the evidentiary deference due the

---

[24] *Estate of Rae v. Murphy*, 956 A.2d 1266, 1270 (Del. 2008) (citing *Porter v. Turner*, 954 A.2d 308, 312 (Del. 2008) (quoting *Cloroben Chem. Corp. v. Comegys,* 464 A.2d 887, 891 (Del.1983)).
[25] 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2730 (4th ed. 2019).
[26] *Id.*
[27] *See id.* § 2730.2 (citing decisions from multiple jurisdictions denying summary judgment in the bad faith insurance context, including instances involving claims for punitive damages); *see, e.g.*, *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65 (5th Cir. 2014); *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931 (4th Cir. 1991) (reasoning "[w]here states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie"); *O'Donnell v. Fin. Am. Life Ins. Co.*, 171 F. Supp. 3d 711 (S.D. Ohio 2016) (finding genuine issues of material fact existed regarding defendant's knowledge and motivations); *Atlas Carriers, Inc. v. Transp. Ins. Co.*, 584 F. Supp. 50 (E.D. Ark. 1983) (determining that "[a]t this stage, the Court cannot say that, given the factual background in this case, a jury could not infer bad faith from such conduct . . . at this point, the Court simply cannot say that the evidence and the reasonable inferences permitted will not present a jury issue under the applicable law").
[28] Wright et al., at § 2730 (quoting *Croley v. Matson Nav. Co.*, 434 F.2d 73, 77 (5th Cir. 1970)).

8

Estate as the non-movant. In AmGuard's motion, it persuasively set forth facts meeting its initial burden on summary judgment to negate each portion of the Estate's claims. In fact, based on the facts it cites, a jury could find its explanations reasonable. Those reasons include alleged "red flags" regarding Mr. Krieger's claim. Statements by Mr. Krieger's employer claiming (1) that Mr. Krieger suffered his injury while stealing copper wire as opposed to when he was working, and then later (2) that Mr. Krieger suffered his injury while driving a forklift that Hero Demolition had prohibited him from using, support AmGuard's claim that it had reasonable justification to delay payment.

On the other hand, there are significant facts of record cutting the other way. First, Hero Demolition's allegations were indisputably false. Furthermore, AmGuard did not notify Mr. Krieger or his attorney about those claims for at least two months after receiving them. AmGuard had given only one written reason for the delay four months before it eventually paid the claim: that AmGuard possessed insufficient medical documentation to support the claim. In addition, the evidence of record demonstrates that AmGuard, no later than July 12, 2017, knew that Mr. Krieger suffered a crush injury to his foot and had multiple broken bones. AmGuard also knew that Mr. Krieger earned modest wages and that he was not being paid during the relevant times. Despite facts evidencing this knowledge, AmGuard took no action to investigate these alleged "red flags" for two full months. In fact, it issued no wage payments until immediately before a scheduled IAB hearing in October.

Regarding the threshold issue of reasonable justification, this evidence of record provides an inference that AmGuard's delay in investigating and paying lost wage benefits occurred without justification. AmGuard's initial reason for delay, a lack of medical documentation, was resolved within a month by the receipt of the emergency room records and medical report. At that point, AmGuard knew the

9

extent of Mr. Krieger's injury but did not pay wage benefits for another three months. The quick disposition of AmGuard's "red flag" suspicions, very soon after AmGuard first notified Mr. Krieger and his attorney of the real reason for delay, further supports the inference that the additional delay was unjustified.

In this case, determining AmGuard's state of mind as to punitive damages logically flows from much of the same evidence relevant to the issue of bad faith. Here, the Estate does not allege that malice motivated AmGuard's delay in payment. Rather, it alleges that AmGuard acted recklessly.

Contrary to AmGuard's argument, a four-month delay in payment—in the face of an injury involving nine bone fractures to Mr. Krieger's foot—supports an inference of recklessness. Further evidence of record supporting this inference includes the fact that AmGuard knew the injury kept Mr. Krieger from his work as a forklift operator and from receiving any income. Yet, it withheld payment for months. As discussed above, the claims notes demonstrate that AmGuard did not investigate the "red flags" for two months. These same factors, coupled with AmGuard's failure to tell Mr. Krieger the true reason for delay despite its statutory obligation to do so,[29] further support a reasonable jury's inference that AmGuard "did not care" about the "plight of its insured."

This claim will require a jury to consider the circumstances in order to determine AmGuard's state of mind at the relevant times. As Superior Court Criminal Pattern Jury Instruction 2.5 provides with regard to state of mind:

> [i]t is of course, difficult to know what is going on in another person's mind. Therefore, you are permitted to draw an inference, or in other

---

[29] *See* 19 *Del. C.* § 2362(a) ("An employer or its insurance carrier shall within 15 days after receipt of knowledge of a work-related injury notify the Department and the claimant in writing . . . if it cannot accept or deny the claim, *the reasons therefor* and approximately when a determination will be made.") (emphasis added). Failing to abide by this statutory provision by not providing the full, real reason for delay until two months after receipt of the claim—and never in writing—further supports an inference of AmGuard's "I don't care" attitude.

words to reach a conclusion, about a defendant's state of mind from the facts and circumstances. In reaching this conclusion, you may consider whether a reasonable person acting in the defendant's circumstances would have had or would not have had the required [state of mind].[30]

The role of the jury regarding state of mind inferences in a civil case is no different than in a criminal case. Given the facts of record and the recognition that these issues are by nature intensely factual, the jury must decide whether AmGuard acted in bad faith and was reckless when doing so.

## C.    No Evidence of Record Supports Compensatory Damages

AmGuard alternatively seeks partial summary judgment because no evidence of record supports a compensatory damages claim. AmGuard is correct that in Delaware, recovery in a bad faith insurance action "is limited to damages that arise naturally from a breach of contract or that were reasonably foreseeable at the time the contract was made."[31] Unliquidated damages such as for pain and suffering or inconvenience are not recoverable.[32] When proving damages in a contract action, a plaintiff must do so to a reasonable certainty.[33] Accordingly, a jury cannot be left to speculate regarding the appropriate measure of damages.[34] In the event a plaintiff proves a contractual breach, but fails to set forth a legally sufficient basis for a damages award, a plaintiff may only recover nominal damages.[35]

---

[30] Del. Super. Crim. P.J.I. 2.5 (2015).

[31] *Tackett*, 653 A.2d at 265 (citing *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1845)).

[32] *Id.* at 266.

[33] *Town of Townsend v. Grassbusters, Inc.*, 2019 WL 3493904, at *4 (Del. Super. Ct. Aug. 1, 2019); *see also LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007), aff'd, 956 A.2d 642 (Del. 2008) (explaining the necessary showing to meet the damages element in a breach of contract claim).

[34] *Grassbusters*, 2019 WL 3493904, at *4.

[35] *Id.*, 2019 WL 3493904, at *4 (citing *Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC*, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009)).

In the context of a bad faith breach of contract claim, "damages generally are confined to the payment of money due, with interest for delay."[36] While contractual interest awarded at the legal rate is normally fixed by the Court post-verdict,[37] a jury finding of the timing of breach would be a necessary prerequisite to fixing any such interest. Neither the amount of its late payments nor evidence supporting exactly what time the payments became late are in the record. Accordingly, the Estate identifies no evidence that would permit a liquidated damages finding to a reasonable certainty. The jury would be forced to speculate.

In its motion, AmGuard met its initial burden regarding the issue of compensatory damages. Namely, the record conclusively supports that it paid Mr. Krieger all benefits due. It follows that interest running at the legal rate from the alleged incremental alleged breaches of contract is the sole recoverable element of compensatory damages.[38]

At present, the Estate has not fairly placed AmGuard on notice, through pleadings or otherwise, that it seeks interest based upon delays in payment of TTD benefits. It first addressed interest at the summary judgment oral argument. In its amended complaint, it referenced only "compensatory damages." Furthermore, it responded to AmGuard's interrogatory requesting itemization of damages by failing to identify any liquidated damages. In addition, it has not identified evidence of record supporting the amounts claimed. In the absence of any identified evidence of record supporting such a claim, a jury would be forced to speculate regarding the amount of compensatory damages due. Given this lack of evidence, on the current

---

[36] *Tackett*, 653 A.2d at 264.

[37] 6 *Del. C.* § 2301(a).

[38] The Estate conceded at oral argument that the extent of awardable compensatory damages are limited to interest due based upon the four months of delayed TTD payments.

record, a jury may only consider the award of nominal damages, together with a potential for punitive damages if it makes the requisite finding.

The Estate indicated at oral argument that it intends to claim interest. Because interest is not difficult to calculate and because case law provides for the potential for interest recovery, the Estate may amend the complaint to include this aspect of a claim in the pretrial stipulation. An amendment of its claim at the pretrial will be contingent on the Estate providing to AmGuard, prior to the pretrial conference, sufficient explanation and evidence to support any such claim. If the Estate does not, non-punitive damages will be limited to nominal damages.

## V.    Conclusion

When viewing the facts in the light most favorable to the Estate, genuine issues of material fact remain regarding whether AmGuard acted in bad faith and whether it acted recklessly. As a result, AmGuard's Motion for Summary Judgment must be **DENIED**, in part. However, AmGuard's Motion must be **GRANTED**, in part, with regard to the limitation of potential compensatory damages due the Estate.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge